SIMMONS, APPELLANT, *v.* MERRILL, LYNCH, PIERCE, FENNER & SMITH, APPELLEE.

[Cite as Simmons v. Merrill, Lynch, Pierce, Fenner & Smith (1977), 53 Ohio App. 2d 91.]

(No. 35792—Decided July 14, 1977.)

*Mr. Milton L. Simmons,* for appellant.

*Messrs. Thompson, Hine & Flory* and *Mr. Daniel W. Hammer,* for appellee.

JACKSON, J. The appellant, Milton L. Simmons, filed suit against the appellee, Merrill, Lynch, Pierce, Fenner & Smith, on June 30, 1970. The complaint alleged two causes of action, one in negligence and one in fraud, in connection with the short sale[1] of 400 shares of common stock in Armstrong Cork.

The record reveals that on May 22, 1970, an employee of appellee advised the appellant to sell Armstrong Cork short. On the basis of this recommendation, the appellant

---

[1] A short sale is a sale of borrowed stock anticipating a decline in the price of the stock so that when the short seller repurchases to replace the borrowed stock he can do so at a cost less than that he originally sold.

sold 400 shares of Armstrong Cork short and put a stop order[2] on the sale at 28½.

On the morning of June 2, 1970, the appellant directed the appellee to raise his stop price to 29. The order did not reach the floor of the stock exchange in time to prevent the appellant from being "stopped out" at 28 7/8. In other words, the short stock was repurchased at 28 7/8 for a loss of $1,560.49.

Within ten days, Armstrong Cork fell from its high of 28 7/8 to a low of 23. If the appellant had purchased Armstrong Cork at 23 he would have made a profit of $938.27.

In his complaint appellant requested $2,498.76 in compensatory damages and $17,498.76 in punitive damages. The appellant, in his first cause of action, argued that the appellee was negligent in its failure to get the appellant's amended stop order to the floor of the stock exchange in time to raise the order. The jury returned a verdict in favor of appellee on this cause of action. The appellant does not appeal this adverse ruling.

The complaint by appellant alleging fraud was based upon the ownership by appellee of approximately 120,000 shares of Armstrong Cork in its own name. Appellee defends this action by alleging that the stock held in its name was held by it beneficially in "street name"[3] or in trust for various investors and, or, clients of appellee.

The appellant disputed this ownership and propounded certain interrogatories to appellee to determine the beneficial ownership of the stock. These interrogatories, Nos. 20, 68, 69, 70 and 73,[4] were not answered by the ap-

---

[2] A stop order is an upper limit on the price the short seller is willing to risk loss. When the stock reaches that limit it will be repurchased, thereby limiting the potential loss.

[3] "Street name" is a term used in the brokerage industry for securities registered in the name of the brokerage house but owned by others.

[4] The interrogatories read:

"*Interrogatory No. 20.* For each day, May 22, 1970 to June 2, 1970, inclusive, how many shares of Armstrong Cork were held in the name of defendant at the close of the New York Stock Exchange?

"*Interrogatory No. 68.* At the close of business each day for the period May 22, 1970 to June 2, 1970, inclusive, how many shares of

pellee, and on March 9, 1972, the appellant moved the court for an order compelling discovery pursuant to Civil Rule 37.

In response to this motion appellee argued that the appellant's motion was "premature," and failed to move for a protective order under Civil Rule 26(C).

On March 6, 1974, the court journalized the following entry ordering discovery:

"Defendant is ordered to answer interrogatories Nos. 15-20, 22, 23, 25 and 26 and Nos. 48-73. Such information as is only ascertainable from defendant's business records shall be made available to plaintiff who shall be given reasonable opportunity to examine same. Answers and opportunity to examine shall be completed by April 8th or *judgment shall be rendered against def.*" (Emphasis added.)

This order of the court commanding compliance in discovery by appellee remained in effect until about two days before the commencement of trial.

In response to this discovery order, appellee supplied the appellant with numerous papers in both pretrial and at trial. None of these documents, however, supplied the appellant with the information requested in his interrogatories, that is, a list of the beneficial owners.[5] This fact

---

Armstrong Cork Company Common were held in the name of 'Cede & Co.' for the account of defendant?

"*Interrogatory No. 69.* For each day, respectively, how many of those shares enumerated in response to the preceding Interrogatory, held for defendant in the name of 'Cede & Co.,' were held beneficially by defendant in the name of 'Cede & Co.' for others?

"*Interrogatory No. 70.* For each day, who were the beneficial owners of those shares enumerated in response to the preceding Interrogatory, what were their then current addresses, and how many shares were beneficially held for each?

"*Interrogatory No. 73.* For each day, who were the beneficial owners of those shares enumerated in response to Interrogatory No. 20, what were their then current addresses, and how many shares were beneficially held for each?"

[5]It is apparent from the record that appellee understood the nature of the interrogatories. On November 20, 1974, a Stipulated Order for Protection of Confidential Information under Civ. R. 26(C)(7) was

was attested to by a witness for appellee, R. Patrick Conner, Operations Manager of appellee in Cleveland, who testified that the answers to the disputed interrogatories could not be obtained from the information supplied the appellant by appellee.

The appellant twice moved the trial court for sanctions pursuant to Civil Rule 37(B)(2), for the failure of appellee to respond to these interrogatories; specifically, the appellant moved for a default judgment. All of these motions were overruled by the trial court and no sanctions were imposed.

At trial the appellant was unable to demonstrate that the stock held by appellee was held in other than the "street name," and his cause of action based upon fraud was dismissed by the court upon a motion by appellee for a directed verdict.

The appellant appeals and assigns three errors in this court:

"1. The trial court erred on November 3, 1975, when it overruled plaintiff's motion of May 9, 1974 for default judgment, based on defendant's refusal to submit to discovery; and erred in permitting defendant to misuse, and abuse, CR 33(C) to avoid discovery.

"2. The trial court erred in overruling plaintiff's motion for judgment NOV.

"3. The trial court erred in refusing to instruct the jury on the law of contracts, thereby preventing it from considering the contract issue, and in limiting plaintiff's ad damnum to $1560.49 rather than $2498.76 as prayed for."

Appellant's first assignment of error argues that the trial court erred in failing to order sanctions against appellee for its refusal to answer interrogatories by appellant which the court had commanded appellee to answer.

The appellant's cause of action in fraud charges that

_____

filed in the court. This order prevented the appellant from disclosing, divulging or discussing with any other person, firm or corporation any material supplied the appellant by appellee without the prior approval of appellee.

appellee was in violation of R. C. 1707.42 when it advised the appellant to sell short. This section provides that:

"Whoever, with intent to secure financial gain to himself, advises and procures any person to purchase any security, and receives any commission or reward for such advice or services *without disclosing to the purchaser the fact of his agency or his interest in such sales, shall be liable to such purchaser for the amount of such purchaser's* damage thereby, upon tender of such security to, and suit brought against, such adviser, by such purchaser. No such suit shall be brought more than one year subsequent to such purchase." (Emphasis added.)

If appellee owned shares of Armstrong Cork in its own name, for its own benefit, the statute appears to have been violated by appellee in advising the short sale; consequently, it would be subject to liability for any damages sustained by appellant resulting therefrom.

The information concerning how the stock was owned is within the exclusive knowledge of and under the complete control of the appellee. Only through a discovery of the list of alleged beneficial owners could the appellant prove his contention that the stock was not held beneficially for others, but rather for the benefit of appellee. The court below, by failing to sanction appellee for not complying with its order compelling discovery, has prevented the appellant from possibly proving his cause of action in fraud.

In its brief to this court, appellee contends that it had complied with the court's order compelling discovery. However, appellee never explained the discrepancy between this contention and the testimony of its own witness, R. Patrick Conner, operations manager of appellee, stating that the information desired by the appellant and ordered discovered by the court could not be obtained from the records supplied by appellee.

During oral arguments, appellee apparently abandoned this defense and argued that the failure of the court to sanction appellee was actually a protective order pursuant to Civil Rule 26(C), the protective order being based eith-

er upon the confidentiality of the information or upon the expense and burden of producing it.

Civil Rule 26(C) states:

"Protective orders. Upon motion by any party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

"If the motion for a protective order is denied in whole or in part, the court may, on such terms and condition as are just, order that any party or person provide or permit discovery. The provisions of Rule 37(A) (4) apply to the award of expenses incurred in relation to the motion."

Appellee did not move for protective order that discovery not be allowed but instead, as previously stated, moved for an order pursuant to Civil Rule 26(C)(7), "that a trade secret or other confidential research, development, or commercial information * * * be disclosed only in a designated way." A stipulated order was entered stating that the information would be made available to the appellant only upon condition that he not divulge such information.

Hence, if the refusal by the court to grant sanctions

was in reality a protective order that discovery not be had, it was made *sua sponte* by the court. Further, this alleged "protective order" was entered without evidence or testimony concerning the necessity of such protection. Appellee never alleged or demonstrated that the discovery would be unduly expensive,[a] nor has it demonstrated that the material is confidential and, therefore, not subject to discovery.

Even if this court were to agree with the allegations of appellee at oral argument that the failure of the court to impose sanctions was in reality a protective order, the imposition of that order was premature. There was no evidence presented demonstrating the necessity of such protection. Moreover, the order would have been imposed without a hearing and without providing the appellant an opportunity to defend. Consequently, based upon the record presently before this court it would have been an abuse of discretion for the trial court to have granted a protective order pursuant to Civil Rule 26(C).

We find merit in the allegation of appellant that his right to demonstrate his cause of action in fraud was prejudiced by the failure of the trial court to enforce its discovery order of March 6, 1974, against appellee. The appellant, however, urges this Court of Appeals to impose sanctions upon the appellee. Particularly, he urges that this court enter a default judgment against appellee.

Pursuant to the discovery provisions of the Ohio Rules of Civil Procedure the trial court has discretionary power to order both discovery and sanctions, *Ward* v. *Hester* (1973), 36 Ohio St. 2d 38. This court is loath to take upon itself in the first instance matters which are within the discretion of the trial court.

The proper redress for the appellant, therefore, is

---

[a]The issue of who should bear the expense of discovery lies within the discretion of the trial court. When the material sought to be obtained is properly discoverable it is error for the court to order that discovery not be had solely because of the expense involved. If the court deems it is not within the interest of justice to saddle appellee with the expense of discovery, the court must still grant the appellant the opportunity to discover the information at his own expense.

not for this court to order sanctions but for this court to reverse and remand the case for further proceedings.

In his second and third assignments of error, the appellant argues that the court below erred in overruling his motion for a judgment n. o. v. The appellant states that the issue of breach of contract was tried by the parties even though it was not pleaded in the complaint and that a breach was conclusively demonstrated. We disagree.

After appellant executed both his sale and purchase of his four hundred shares of Armstrong Cork he received a confirmation of the transaction from appellee. On the reverse side of these confirmation slips it states:

"Name of other party to transaction and time of execution will be furnished on request."

These confirmation slips were introduced into evidence by the appellant as plaintiff's exhibits C and E.

The record discloses the following interrogatory propounded by appellant during pretrial discovery, and the answer by appellee, as follows:

"13. 'If the answer to the preceding interrogatory* is "Yes", at precisely what time, on June 2, 1970, were said 400 shares of Armstrong Cork purchased on behalf of plaintiff at 28-7/8 to cover said short sale?'

"*Answer* 'This information is not within the possession of defendant, and said information would have to be obtained from the New York Stock Exchange.' "

The appellant argues that the clause on the reverse of the confirmation slip created a contract which was breached by the response of appellee to this interrogatory entitling appellant to the damages prayed for in the complaint.

We find these assignments of error to be without merit.

First, while Civil Rule 15(B) permits amendments to pleadings to include issues not raised in the original pleadings when those issues are tried by the parties, the issue of breach of contract cannot be said to have been tried by the parties in the instant case. We are persuaded that the admission of the two confirmation slips and the contents of appellant's interrogatory No. 13 does not es-

tablish either an expressed or implied trial of the cause of action, but rather an afterthought on the part of the appellant.

Second, it is not apparent that the statement on the back of the confirmation slip created a contract between the appellant and the appellee. The clause appears to be totally gratuitous on the part of appellee as there was no evidence adduced to indicate that this clause was part of the consideration bargained for by the parties.

Third, if a contract were held to exist, appellee's response to interrogatory 13 cannot be held as a matter of law to be a breach. The answer stating that appellee would have to acquire the information from the New York Stock Exchange was not a refusal, but a statement by appellee that the information requested by the appellant was not within its control and would be difficult to obtain.

Fourth, and finally, even if the contention of appellant were found to be meritorious, we are unable to ascertain any damages to appellant flowing from the breach. Damages to appellant, if any, arise out of the alleged negligent failure of appellee to transmit appellant's amended stop order to the floor of the stock exchange in time to prevent the appellant from being stopped out, or from the alleged fraud based upon the failure by appellee to disclose ownership of 120,000 shares of Armstrong Cork. The record fails to disclose evidence of damages resulting from the failure of appellee to disclose the time of transaction.

Accordingly, the decision of the Court of Common Pleas is reversed and this cause is remanded for further proceedings according to law.

*Judgment reversed.*

CORRIGAN, P. J., concurs.
PRYATEL, J., dissents.

PRYATEL, J., dissenting. Respectfully, I dissent.

Appellant's request for discovery is anchored on the theory that R. C. 1707.42 governs "short sale" speculations. A review of the language of that subsection, and the

Ohio Blue Sky Law, of which it is a part, in my judgment does not support that theory.

R. C. 1707.42 makes one liable who, with an intent to secure financial gain, advises a person to purchase securities and receives a commission or reward without disclosing his agency or interest in the sale. The interested advisor is liable to the purchaser for the amount of his damage thereby, *"upon tender of such security."*

In the present case, the allegedly interested advisor (appellee) did not advise the appellant to purchase anything in which he would obtain such ownership or possession that he would have it (or the right to it) to tender back. Rather, the appellee advised the appellant to engage in a proceeding known as a "short sale" which has gained popularity in recent years.

The advisor (appellee), in substance, offered to borrow for the appellant a certain quantity of stock which the appellant would neither own nor possess. Appellee would then sell the stock for the appellant at what the appellee and the appellant believed to be an artificially inflated price, only to purchase the stock after the price declined, when appellee would return to the stock lender that quantity of stock which had been borrowed on the appellant's behalf. After paying a commission, appellant would pocket the difference.

As can be seen, R. C. 1707.42 is triggered only "upon tender of such security." But the appellant here neither owned nor possessed anything to tender, which is but one specific indication that this subsection does not apply to "short sale" proceedings.

In addition, the appellant contends that a fraud may have been perpetrated upon him by appellee's nondisclosure when the borrowed stock was sold on the appellant's behalf. Yet at this stage, the appellant was in no sense a purchaser. He was only nominally a seller and the appellee (or its principal) may have been the purchaser. However, there are no provisions in the Ohio Blue Sky Law reaching nondisclosure of material facts by a purchaser (here, the appellee) which might amount to fraud. *See, Toledo Trust* v. *Nye* (N. D. Ohio, 1975), 392 F. Supp. 484.

Even at the later stage when the same quantity of stock was purchased on appellant's behalf to "cover short," the appellant was a purchaser in name only, with no ownership or even possession which would make him a purchaser in the sense contemplated by the Ohio Blue Sky Law. The stock belonged in actuality to the lender who had a right to have that quantity returned to him which had been borrowed.

The entire thrust of the Ohio Blue Sky Law is to define the duties and liabilities of sellers for the protection of purchasers engaged in ordinary buy-sell transactions. It can no more be construed to protect a "short sale" speculator than it can be stretched to protect a seller who may be the victim of fraud.

I would affirm the lower court.

In my opinion the appellant who cannot comply with the condition precedent of tendering the security cannot invoke R. C. 1707.42 to determine the agency or interest of his advisor. That is not to say that the appellant has no cause of action, but only that it cannot be pursued under R. C. 1707.42.