**In re JETER CHILDREN.**

2001-Ohio-4362.]

Court of Common Pleas of Ohio,
Franklin County, Juvenile Branch,
Division of Domestic Relations.

No. 99JU–1691.

Decided Feb. 23, 2001.

Jefferson E. Liston, for the Jeter Children.

Christine Dobrovich, for Franklin County Children Services.

WILLIAM F. CHINNOCK, Judge.

{¶ 1} This is a juvenile court custody case in which the state is asking the court to permanently terminate the parent-child relationship between the natural parents and their three children. This decision examines the issue whether the parents have a right to inspect and copy the *original* documents in the state's case file or can be compelled to accept in substitution a computer disc depicting such documents.

{¶ 2} In this case, Franklin County Children Services ("FCCS") moved for permanent custody of the Jeter children. Their natural mother contested the motion. In response to a discovery request by court-appointed counsel for the mother, FCCS provided the parent with a computer disc containing a copy of the original case file documents. Mother's counsel then served a subpoena duces tecum upon FCCS Director John Saros for the *original* case documents, and when the subpoena was ignored, counsel filed a motion to compel discovery of the *original* documents.

{¶ 3} FCCS claims that the advantages of technological advancement justify its providing such computer *discs in substitution of the original documents* to the natural parents of children in permanent custody cases. The mother claims that FCCS's providing electronic images of documents *in substitution of the original documents* does not come within the letter or spirit of the law.

{¶ 4} Matters involving fundamental constitutional rights, including termination of parental rights, require close scrutiny.[1] The Supreme Court of the United States in *Santosky v. Kramer* has ruled that under the United States Constitution, natural parents have a constitutionally protected liberty interest in the care and custody of their children and that a motion to terminate parental rights "seeks not merely to infringe that fundamental liberty interest, but to end it."[2]

{¶ 5} The court in *Santosky* pointed out: "The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their

1. *M.L.B. v. S.L.J.* (1996), 519 U.S. 102, 117 S.Ct. 555, 136 L.Ed.2d 473.

2. *Santosky v. Kramer* (1982), 455 U.S. 745, 759, 102 S.Ct. 1388, 71 L.Ed.2d 599.

parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures." [3] The court succinctly pointed out that "the consequence of an erroneous termination [of parental rights] is the unnecessary destruction of their natural family." [4]

{¶ 6} The United States Supreme Court contrasts the awesome power and resources of the state with those of the parents in a parental termination case:

{¶ 7} "The State's ability to assemble its case almost inevitably dwarfs the parents' ability to mount a defense. No predetermined limits restrict the sums an agency may spend in prosecuting a given termination proceeding. The State's attorney usually will be an expert on the issues contested and procedures employed at the factfinding hearing, and enjoys full access to all public records concerning the family. The State may call on experts in family relations, psychology, and medicine to bolster its case. Furthermore, the primary witnesses at the hearing will be the agency's own professional caseworkers whom the State has empowered both to investigate the family situation and to testify against the parents. Indeed, because the child is already in agency custody, the State even has the power to shape the historical events that form the basis for termination." [5]

{¶ 8} The inherent power of the courts of Ohio to control discovery cannot be questioned. [6] In addition, the Ohio legislature has mandated that public records be made available for inspection on request, and grants the person requesting the records the right to have the public record duplicated upon paper or upon the same medium in which it is kept by the public office. [7] Although FCCS records are "confidential" under R.C. 5153.17, that confidentiality does not preclude full discovery by parties to a permanent custody case.

{¶ 9} In 1970, the state of Ohio adopted discovery rules modeled after those used in the federal courts, providing for wide-ranging discovery. The liberal philosophy of the federal discovery rules is embodied in Justice Murphy's often-

---

3. Id. at 753, 102 S.Ct. 1388, 71 L.Ed.2d 599.

4. Id. at 766, 102 S.Ct. 1388, 71 L.Ed.2d 599.

5. Id. at 763, 102 S.Ct. 1388, 71 L.Ed.2d 599.

6. *Miami & Montgomery Turnpike Co. v. Baily* (1881), 37 Ohio St. 104, 1881 WL 68; *State ex rel. Pfeiffer v. Lorain Cty. Common Pleas Court* (1968), 13 Ohio St.2d 133, 42 O.O.2d 362, 235 N.E.2d 232; *In re Contemnor Caron* (2000), 110 Ohio Misc.2d 58, 744 N.E.2d 787.

7. R.C. 149.43; see, also, R.C. 9.01.

quoted phrase in *Hickman v. Taylor* that "[n]o longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case." [8] The Supreme Court of Ohio has endorsed the *Hickman* discovery philosophy, declaring that even discovery "fishing expeditions" are not "per se" objectionable because discovery often reveals the "truth of the situation, which is, and must remain, the ultimate goal in determining the rights of parties in litigation." [9]

■ {¶ 10} Civ.R. 26 is quite possibly the most important of the Ohio Civil Rules, because the immediate goal of the discovery process is full disclosure and discovery of the relevant facts of a case, and the ultimate goal is to allow the court to have all the relevant facts placed before it so it can render a well-informed decision.

{¶ 11} The scope of the Ohio Rules of Discovery is all-inclusive, limited only by relevancy and privilege. Under Civ.R. 26(B)(1), parties may obtain discovery "regarding *any matter*, not privileged, which is relevant to the subject matter involved in the pending action." (Emphasis added.) This grant of authority permits discovery of all *documents* relative to the subject matter of the action, even if these documents would be inadmissible at trial if they are "reasonably calculated to lead to discovery of admissible evidence." Civ.R. 34 permits "inspection and copying" of documents within "the possession, custody or control of the party upon whom the request is served." The term "documents" is nonexclusively defined as "writings, drawings, graphs, charts, photographs, phonorecords, and other data compilation from which intelligence data can be perceived, with or without the use of detection devices."

{¶ 12} The broad grant of authority under Civ.R. 26(B) is counterbalanced by an equally broad protective order provision under Civ.R. 26(C). The nonmoving party may seek a protective order upon a "good cause" showing of need for protection from "annoyance, embarrassment, oppression, undue burden, or expense." [10]

{¶ 13} The restrictive nature of Juv.R. 24 does not obviate the necessity or right of liberal discovery in permanent custody cases. Juv.R.1 provides: "These rules shall be liberally interpreted and construed * * * to effect the just determination of every juvenile court proceeding by ensuring the parties a fair hearing and the recognition and enforcement of their constitutional and other

---

8. *Hickman v. Taylor* (1947), 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451.

9. *Ex Parte Oliver* (1962), 173 Ohio St. 125, 130, 18 O.O.2d 388, 180 N.E.2d 599.

10. See *Midwest Sportservice v. Andreoli* (1981), 3 Ohio App.3d 242, 3 OBR 273, 444 N.E.2d 1050; *Simmons v. Merrill Lynch* (1977), 53 Ohio App.2d 91, 372 N.E.2d 363.

legal rights." [11]   "Since the State has an urgent interest in the welfare of the child, it shares the parent's interest in an accurate and just decision." [12]

■ {¶ 14}   For at least a century and a half, the "best interests of the child" standard has been the polestar for Ohio courts in determining matters involving children.[13]   Full discovery is necessary to meet this standard in matters involving children.   As noted, the scope of the discovery rules is all-inclusive, limited only by relevancy and privilege.   Factors of convenience and technological advancement are not applicable considerations within the letter or spirit of the discovery rules, especially where fundamental constitutional rights are at stake.

{¶ 15}   Extensive research has failed to uncover any legal authority that would compel parties to a child custody action to accept a computer disc depicting documents *in substitution of their right to inspect and copy the original documents* in the case file of the children services agency.   *The law of discovery in Ohio grants them the right to access all documents and records in whatever formats they are kept by the public agency, including originals.*

■ {¶ 16}   Analysis of the United States Constitution, as well as the statutes, case law, and civil rules of Ohio, necessarily compels the conclusion that despite the likely advantages to public agencies of storing and retrieving information electronically, parties to an action to terminate the parent-child relationship forever have the right to access and copy the *original* documents in the case file of the children services agency.

{¶ 17}   The mother's motion to compel discovery is granted, and Franklin County Children's Services is ordered to provide her forthwith with the *original* documents in the case file for inspection and copying.

{¶ 18}   SO ORDERED.

Judgment accordingly.

WILLIAM F. CHINNOCK, J., retired, of the Cuyahoga County Juvenile Court, sitting by assignment.

---

11.   See, also, Juv.R. 45(B);   *Kent v. United States* (1966), 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84;   and *In re Gault* (1967), 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527.

12.   *Lassiter v. Dept. of Social Serv.* (1981), 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640.

13.   *Gishwiler v. Dodez* (1855), 4 Ohio St. 615, 1855 WL 28. ·