[This opinion has been published in *Ohio Official Reports* at 75 Ohio St.3d 578.]

MAUZY ET AL., APPELLANTS, *v*. KELLY SERVICES, INC. ET AL., APPELLEES.

**[Cite as *Mauzy v. Kelly Services, Inc.*, 1996-Ohio-265.]**

*Age discrimination—Phrase "Absent direct evidence of age discrimination" used in Kohmescher v. Kroger Co., construed—Plaintiff must show that she was "discharged" in order to establish a prima facia case of age discrimination under former R.C. 4101.17—When plaintiff alleging unlawful age discrimination chooses termination in lieu of transfer, the decision cannot be construed as an actual discharge under former R.C. 4101.17—Test for determining whether an employee was constructively discharged.*

1.  The phrase "Absent direct evidence of age discrimination," as used in *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 575 N.E.2d 439, at the syllabus, refers to a method of proof, not a type of evidence.  It means that a plaintiff may establish a prima facie case of age discrimination directly by presenting evidence, of any nature, to show that an employer more likely than not was motivated by discriminatory intent.

2.  Irrespective of whether an inference of discriminatory intent is created directly or indirectly, the plaintiff must show that she was "discharged" in order to establish a prima facie case of age discrimination under former R.C. 4101.17.

3.  Where a plaintiff alleging unlawful age discrimination chooses termination in lieu of transfer, her decision cannot be construed as an actual discharge under former R.C. 4101.17.  However, she may establish by sufficient evidence that she was constructively discharged.

4.     The test for determining whether an employee was constructively discharged is whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign.

————————————

(No. 95-301—Submitted March 5, 1996—Decided June 12, 1996.)

APPEAL from the Court of Appeals for Lake County, No. 94-L-029.

————————————

**{¶ 1}** Plaintiff-appellant, Phyllis Ruth Mauzy, began employment with defendant-appellant, Kelly Services, Inc. ("Kelly") in April 1974 as Resident Branch Manger of Kelly's Mentor, Ohio office. Throughout her employment, Mauzy consistently received exceptional performance evaluations from her supervisors. She was classified as a "Number 1 Manager" and, in 1987, received the "Manager of the Year Award."

**{¶ 2}** In September 1987, defendant-appellee Patricia N. Hart became the Vice President and Regional Manager in charge of the Cleveland Region for Kelly, and thus Mauzy's supervisor. On August 6, 1992, Hart notified Mauzy that she was being reassigned to manage Kelly's recently downsized Mayfield office and to fill the newly created position of workers' compensation manager, and that her salary and benefits would remain the same. Mauzy refused the reassignment and her employment ended on August 18, 1992. Mauzy was sixty-one years of age at the time.

**{¶ 3}** Hart and Mauzy disagree sharply on the series of events leading to Mauzy's reassignment. According to Hart, she attended a meeting during the week of June 1, 1992, at Kelly's corporate headquarters in Troy, Michigan, at which there was discussion concerning cost-cutting approaches that could be implemented by Kelly's regional managers. In particular, it was suggested that some of Kelly's full-service offices could be downsized to "employment

centers" and the downsized territory incorporated into other full-service centers in the same geographic area. Also discussed was the creation of the position of regional workers' compensation manager who would monitor claims filed by Kelly temporary employees and develop safety programs in conjunction with Kelly's customers.

{¶ 4} Accordingly, Hart made the decision to downsize the Mayfield office and incorporate its territory into the Mentor office. She also determined that Mauzy was the most qualified person in the Cleveland region to fill the job of workers' compensation manager. In order to implement this regional reorganization, Hart decided to transfer the manager of the Mayfield branch, Pamela Vaughn, to serve as regional branch manager of the Mentor office, and transfer Mauzy to the Mayfield office to serve as both manager of the Mayfield employment center and workers' compensation manager.

{¶ 5} When Hart informed Mauzy of her reassignment, Mauzy first expressed interest in the workers' compensation position but, upon learning that she would be relocated to the Mayfield office, refused the job. After several attempts to convince Mauzy to accept the transfer, Hart finally told Mauzy that if she did not report to Mayfield on August 17, 1992, Kelly would assume that she wished to terminate her employment. When Mauzy failed to report to Mayfield on August 17, she was given one more chance to report on August 18. When she failed to report to Mayfield on August 18, it was concluded that she had decided to relinquish her employment.

{¶ 6} Patricia MacKinnon, Regional Manager, Major Market Division for Kelly, set forth a version of the facts similar to that of Hart's, except to state that Mauzy "left us no alternative but to terminate her employment."

{¶ 7} Mauzy's version is markedly different from that of Hart's. According to Mauzy, when Hart took over as her supervisor, Hart "made it absolutely clear that she wanted younger people hired, and would only allow

consideration of recent college graduates." Hart's first question was, "What is the applicant's age?" Hart asked Mauzy when she planned to retire and told her that "[i]f I were you, I would take the money and run." Hart also wrote a note in Mauzy's final performance evaluation that "you can't teach an old dog new tricks."[1]

{¶ 8} Between 1988 and 1992, Hart consistently gave Mauzy negative evaluations. Hart berated Mauzy in front of coworkers for things Hart allowed younger employees to do. Hart removed three of Mauzy's four office staff; reduced Mauzy's territory in half; and, in April 1992, had already introduced Vaughn to Mauzy's key customers. Mauzy further testified that Vaughn was rated a "No. 5 manager"; and that the workers' compensation manager position was never filled and the Mayfield office was eventually "phased-out."

{¶ 9} On September 24, 1992, Mauzy and her husband, appellants, instituted this action in the Lake County Court of Common Pleas against Kelly and Hart, alleging in part that Mauzy's termination was the result of unlawful age discrimination in violation of former R.C. 4101.17. The trial court entered

---

1. This note is the subject of much dispute. During Mauzy's deposition, Kelly's former counsel handed Mauzy an exhibit consisting of several pages reflecting an evaluation of Mauzy for 1991. The note was mixed in loosely with this evaluation. Mauzy read the note, stated, "I don't think you want me to have this note. I already read it, though," and handed it back. Later, upon retaining new counsel, Mauzy served a document request upon Kelly and Hart seeking the note. Kelly's former counsel filed an affidavit in which he stated that the note was a memorialization of his own thought process, was not made by Kelly or any of its representatives and was inadvertently mixed in between pages of the exhibit, and that the characterizations ascribed to the note were inaccurate. In particular, he stated that the note was written on "my own 'notepad stationery,' with the heading 'From The Desk Of: Robert S. Gilmore.'" Moreover, Gilmore claimed that "[h]e searched [his] files, but was unable to locate the notepaper," and that in any event the note was protected under the attorney work-product doctrine. Mauzy, however, filed an affidavit stating that "during [her] deposition, [she] looked at both sides of the note and it did not contain any printing, and specifically did not contain the printed words "From the Desk of: ROBERT S. GILMORE." In addition, Mauzy's affidavit recited that "[t]he note did contain handwriting in thin black ink which [she] recognized to be the handwriting of Patricia Hart."

We do not purport by this rendition to resolve any issues of fact or law that may arise from the circumstances surrounding this note. Our only concern at this point is with Mauzy's testimony regarding the note and the role it plays in light of the issues on appeal and Civ.R. 56(C).

summary judgment for Kelly and Hart, concluding that Mauzy "was not discharged from her employment within the meaning of the statute so as to maintain a claim for age discrimination but instead voluntarily relinquished her employment."

{¶ 10} The court of appeals affirmed the decision of the trial court. In so doing, the court agreed with Mauzy that "the four elements [to establish a prima facie case of age discrimination] set forth in the syllabus of *Kohmescher* [*v. Kroger Co.* (1991), 61 Ohio St.3d 501, 575 N.E.2d 439] need not be proven where direct evidence of age discrimination is presented." The court found, however, that Mauzy failed to present such direct evidence of age discrimination. In so finding, the court relied on the definition of "direct evidence" as set forth in Black's Law Dictionary (5 Ed.1979) 414: "Evidence that directly proves a fact, without an inference or presumption, and which in itself, if true, conclusively establishes that fact." The court of appeals then reasoned that "[a]s a result, appellants were required to present a prima facie case of discrimination by proving the four elements set forth in the syllabus of *Kohmescher*." Since Mauzy was offered a lateral transfer and voluntarily chose to reject it, "she was not terminated within the meaning of R.C. 4101.17."

{¶ 11} The cause is now before the court pursuant to the allowance of a discretionary appeal.

_____

*Dworken & Bernstein Co., L.P.A., Patrick J. Perotti* and *Robert J. Hoffman,* for appellants.

*Thompson, Hine & Flory, Michael J. Frantz* and *Daniel A. Ward,* for appellees.

*Louis A. Jacobs; Spater, Gittes, Schulte & Kolman* and *Frederick M. Gittes,* urging reversal for *amici curiae,* Ohio Employment Lawyers Association, Ohio Now Education and Legal Fund, National Conference of

Black Lawyers, Columbus Chapter, Mid Ohio Board for an Independent Living Environment, Ada-Ohio, and Police Officers for Equal Rights.

*Cathy Ventrell-Monsees,* urging reversal for *amicus curiae,* American Association of Retired Persons.

*Vorys, Sater, Seymour & Pease* and *David A. Westrup,* urging affirmance for *amicus curiae,* Ohio Chamber of Commerce.

———————————

**ALICE ROBIE RESNICK, J.**

{¶ 12} There are two issues presented for our determination — one involving the grant of summary judgment in favor of appellees on Mauzy's claim of unlawful age discrimination under former R.C. 4101.17, and the other involving the denial of two requests by Mauzy for additional discovery. The facts pertaining to the second issue will be set forth *infra*. We proceed first to the issue of summary judgment because this issue can be resolved without regard to the further issue of discovery.

I

{¶ 13} The broad issue here is whether Mauzy presented sufficient evidence to withstand a motion for summary judgment. Ultimately, this issue turns on whether the circumstances surrounding Mauzy's separation from Kelly can properly be viewed as a "discharge" under former R.C. 4101.17. However, in light of the opinions below and the arguments advanced by the parties, we find it necessary to clarify certain aspects of the requirements for establishing a prima facie case of age discrimination.

{¶ 14} Former R.C. 4101.17 (now renumbered R.C. 4112.14) provided in part as follows:

"(A) No employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established

6

requirements of the job and laws pertaining to the relationship between employer and employee."

**{¶ 15}** In *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146, 6 OBR 202, 451 N.E.2d 807, we adopted the analytic framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, for use in Title VII cases, and modified the elements of a prima facie case to fit the contours of former R.C. 4101.17. Thus, we held that:

"In order to establish a prima facie case of age discrimination, violative of R.C. 4101.17, in an employment discharge action, plaintiff-employee must demonstrate (1) that he was a member of the statutorily-protected class, (2) that he was discharged, (3) that he was qualified for the position, and (4) that he was replaced by, or that his discharge permitted the retention of, a person not belonging to the protected class. Defendant-employer may then overcome the presumption inherent in the prima facie case by propounding a legitimate, nondiscriminatory reason for plaintiff's discharge. Finally, plaintiff must be allowed to show that the rationale set forth by defendant was only a pretext for unlawful discrimination."[2]

**{¶ 16}** In *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 575 N.E.2d 439, at the syllabus, we modified *Barker*, in relevant part, by prefacing the first paragraph of its syllabus with the phrase, "Absent direct evidence of age discrimination." In so doing, we explained as follows:

"Research indicates that the *McDonnell Douglas* standards borrowed in *Barker, supra*, were never intended to be applied strictly. * * *

---

2. The fourth element for the establishment of the prima facie case set forth herein is questionable in light of the recent United States Supreme Court decision in *O'Connor v. Consol. Coin Caterers Corp.* (1996), 517 U.S. __, 116 S.Ct. 1307, 134 L.Ed.2d 433, 1996 WL 142564.

"Moreover, as the high court stated in *Trans World Airlines, Inc. v. Thurston* (1985), 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523, 533, * * * '* * * the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination. * * *'

"* * * As the court stated in *Barnes v. GenCorp., Inc.* (C.A.6, 1990), 896 F.2d 1457, 1464: '* * * the importance of the *McDonnell Douglas* "test" is its discussion of the elements a plaintiff must prove to establish a prima facie case of discrimination *absent direct, circumstantial, or statistical evidence of discrimination.*' (Emphasis added.) * * *

"* * *

"Therefore, based on all of the foregoing, we modify the first sentence of paragraph one of the syllabus in *Barker, supra*, * * *. Under this modified standard, it should be abundantly clear that direct evidence of age discrimination will be sufficient to establish a prima facie case." *Id.*, 61 Ohio St.3d at 504-506, 575 N.E.2d at 442-443.

{¶ 17} The court of appeals interpreted the words "direct evidence" to mean "'[e]vidence that directly proves a fact, without an inference or presumption.'" Both parties agree that this interpretation, as stated and applied by the court of appeals, amounts to a rendition of a dichotomy between "direct" and "circumstantial" evidence. Mauzy argues, however, that the term "direct evidence," as used in *Kohmescher*, "refers to the *method* of proof and not the *type* of evidence." (Emphasis *sic*.) We agree.

{¶ 18} In order to prevail in an employment discrimination case, the plaintiff must prove discriminatory intent. "'The state of a man's mind is as much a fact as the state of his digestion. It is true that it is very difficult to prove what the state of a man's mind at a particular time is, but if it can be ascertained it is as much a fact as anything else.'" *United States Postal Serv. Bd. of Governors v. Aikens* (1983), 460 U.S. 711, 716-717, 103 S.Ct. 1478, 1482, 75

L.Ed.2d 403, 411, quoting *Eddington v. Fitzmaurice* (1885), 29 Ch.Div. 459, 483.

{¶ 19} The function of the *McDonnell Douglas* prima facie test is to allow the plaintiff to raise an inference of discriminatory intent indirectly. It serves to eliminate the most common nondiscriminatory reasons for the employer's action: lack of qualifications or the absence of a vacancy. *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 253-254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207, 215-216; *Internatl. Bhd. of Teamsters v. United States* (1977), 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396, 429, fn. 44.

{¶ 20} As the Supreme Court explained in *Furnco Constr. Corp. v. Waters* (1978), 438 U.S. 567, 577, 98 S.Ct. 2943, 2949-2950, 57 L.Ed. 2d 957, 967:

"A prima facie case under *McDonnell Douglas* raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. See *Teamsters v. United States, supra*, at 358 [97 S. Ct. at 1866, 52 L.Ed.2d at 429] n. 44. And we are willing to presume this largely because we know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting. Thus, when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with *some* reason, based his decision on an impermissible consideration such as race." (Emphasis *sic*.)

{¶ 21} Thus, *McDonnell Douglas* is one method, an indirect method involving the process of elimination, whereby the plaintiff may create an inference that an employment decision was more likely than not based on illegal discriminatory criteria. The process of elimination, however, is not the only

method by which such an inference may be created. As the high court explained in *Teamsters, supra*, 431 U.S. at 358, 97 S.Ct. at 1866, 52 L.Ed.2d at 429:

"[T]he *McDonnell Douglas* pattern [is not] the *only* means of establishing a prima facie case of individual discrimination. Our decision in that case * * * did not purport to create an inflexible formulation. We expressly noted that '(t)he facts necessarily will vary in Title VII cases, and the specification * * * of the prima facie proof required from (a plaintiff) is not necessarily applicable in every respect to differing factual situations.' The importance of *McDonnell Douglas* lies, not in its specification of the discrete elements of proof there required, but in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." (Emphasis *sic*.) (Citation omitted.) Thus, "[a]s in any lawsuit, the plaintiff may prove his case by direct or circumstantial evidence." *Aikens, supra*, 460 U.S. at 714, 103 S.Ct. at 1481, 75 L.Ed.2d at 409, fn. 3.

{¶ 22} This is clearly what we had in mind in *Kohmescher, supra*, 61 Ohio St.3d at 505, 575 N.E.2d at 442, when we emphasized the notion that the four-element *McDonnell Douglas* prima facie test comes into play "'*absent direct, circumstantial, or statistical evidence of discrimination*.'" In fact, the dissenting opinion of Justice Holmes, albeit lamenting this conclusion, interpreted the majority opinion in a similar vein. *Id.*, 61 Ohio St.3d at 507, 575 N.E.2d at 443.

{¶ 23} Appellees argue, however, "[t]hat a plaintiff attempting to produce direct evidence to avoid application of the *McDonnell Douglas* test cannot rely upon the presentation of merely circumstantial evidence." In support, appellees cite a litany of federal cases which do, indeed, draw a similar conclusion. In reaching such a conclusion, these cases invariably rely upon

certain language concerning "direct evidence" used by the United States Supreme Court in *Trans World Airlines, Inc. v. Thurston* (1985), 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523, and by Justice O'Connor's concurring opinion in *Price Waterhouse v. Hopkins* (1989), 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268. The cases, however, attempt to apply the term "direct evidence" in a context different from that of its origin.

{¶ 24} In *Thurston, supra*, 469 U.S. at 121, 105 S.Ct. at 621, 83 L.Ed.2d at 533, the Supreme Court stated that "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." The "direct evidence" in *Thurston* was a transfer policy under which airline captains disqualified from serving because of their age were not afforded the same privilege as captains disqualified for reasons other than their age to displace less senior flight engineers. The court found this policy to be discriminatory on its face, thus placing the *burden of persuasion* on the employer to prove an affirmative defense. *Id.*, 469 U.S. at 121-122, 105 S.Ct. at 621-622, 83 L.Ed.2d at 533. The opinion in *Thurston*, however, does not disclose whether the term "direct evidence" was being used to refer to the type of evidence required in order to "shift" the burden of persuasion to the employer, or merely to indicate the fact that plaintiff had proven discrimination.

{¶ 25} In *Price Waterhouse*, the plurality opinion concluded that when a plaintiff proves that gender played a motivating part in an employment decision, the *burden of persuasion* is then upon the employer to prove that it would have made the same decision even if it had not taken plaintiff's gender into account. In concluding that plaintiff proved discrimination, the plurality focused its attention on certain negative gender-related comments made by Price Waterhouse partners in evaluating Hopkins for partnership. In its opinion, the plurality specifically stated that:

"By focusing on Hopkins' specific proof, however, we do not suggest a limitation on the possible ways of proving that stereotyping played a motivating role in an employment decision, and we refrain from deciding here which specific facts, 'standing alone,' would or would not establish a plaintiff's case, since such a decision is unnecessary in this case." *Id.*, 490 U.S. at 251-252, 109 S.Ct. at 1791, 104 L.Ed.2d at 288-289.

{¶ 26} On the other hand, in her concurring opinion Justice O'Connor indicated that she would require "direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision." *Id.*, 490 U.S. at 277, 109 S.Ct. at 1805, 104 L.Ed.2d at 305, O'Connor, J., concurring.[3]

{¶ 27} The federal circuits, therefore, were left to grapple with the issue of whether, in light of *Thurston* and *Price Waterhouse*, the plaintiff is required to present "direct evidence" of discrimination as a precondition to "shifting" *the burden of persuasion* and, if so, what constitutes "direct evidence." Not surprisingly, the various federal courts have about as many solutions to this problem as they do employment discrimination cases. See, *e.g., Manzer v. Diamond Shamrock Chemicals Co.* (C.A.6, 1994), 29 F.3d 1078; *Davis v. Chevron U.S.A., Inc.* (C.A.5, 1994), 14 F.3d 1082; *Ostrowski v. Atlantic Mut. Ins. Cos.* (C.A.2, 1992), 968 F.2d 171; *Tyler v. Bethlehem Steel Corp.* (C.A.2,

---

3. The dissent interpreted the holding of the case narrowly:

"[I]n a limited number of cases Title VII plaintiffs, by presenting direct and substantial evidence of discriminatory animus, may shift the burden of persuasion to the defendant to show that an adverse employment decision would have been supported by legitimate reasons. The shift in the burden of persuasion occurs only where a plaintiff proves by direct evidence that an unlawful motive was a substantial factor actually relied upon in making the decision." *Price Waterhouse* 490 U.S. at 280, 109, S.Ct. at 1806, 104 L.Ed.2d at 307.

Justice White, however, unlike Justice O'Connor, did not indicate a preference for "direct evidence" in his concurring opinion. Thus, only four Justices (three dissenting and one concurring) have indicated a preference for "direct evidence." Moreover, in light of the changed composition of the high court, it is impossible to gauge a majority position on this issue.

1992), 958 F.2d 1176; *Jackson v. Harvard Univ.* (C.A.1, 1990), 900 F.2d 464; *Chipollini v. Spencer Gifts, Inc.* (C.A.3, 1987), 814 F.2d 893.

{¶ 28} In this context, however, the term "direct evidence," whatever it means and to the extent it is even required, is used to distinguish a *Thurston* or *Price Waterhouse* case from a *McDonnell Douglas* case. See Sullivan, Accounting for *Price Waterhouse*: Proving Disparate Treatment Under Title VII (1991), 56 Brook.L.Rev. 1107, 1137. In other words, the term is inserted as a precondition to "shifting" the burden of *persuasion*; it was not fashioned by its proponents to create a dichotomy between two opposing methods of establishing a *McDonnell Douglas* prima facie case. The caliber of evidence as "direct" does, indeed, eschew reliance on the *McDonnell Douglas* paradigm, not because it is the sole alternative method by which to create an inference of discrimination, but because it rises to the level of actually proving discrimination. The issue of what is required to "shift" the burden of persuasion, however, is an issue separate and apart from the issue of what is required to raise an inference of discrimination.

{¶ 29} Clearly, in *Kohmescher* we were not concerned with the issue of when the burden of persuasion should be placed on the employer. We were only concerned "that direct evidence of discrimination will be sufficient to establish a prima facie case." *Id.*, 61 Ohio St.3d at 506, 575 N.E.2d at 443. In this context, the phrase "direct evidence of age discrimination" is indicative of a method of proof, not a type of evidence. It is, in a sense, a misnomer. It means that the plaintiff may establish a prima face case directly by presenting evidence, of any nature, to show that the employer more likely than not was motivated by discriminatory animus. *Barnes v. GenCorp., Inc.* (C.A. 6, 1990), 896 F.2d 1457, 1464; *Perry v. Kunz* (C.A.8, 1989), 878 F.2d 1056, 1058-1059; *Oxman v. WLS-TV* (C.A.7, 1988), 846 F.2d 448, 454-455; *Wilhelm v. Blue Bell, Inc.* (C.A.4, 1985), 773 F.2d 1429, 1432; *Equal Emp. Opportunity Comm. v. Electrolux*

*Corp.* (D.C.Va. 1985), 611 F.Supp. 926, 927-928; *Blackwell v. Sun Elec. Corp.* (C.A.6, 1983), 696 F.2d 1176, 1180; *Lovelace v. Sherwin-Williams Co.* (C.A.4, 1982), 681 F.2d 230, 239; *Stanojev v. Ebasco Services, Inc.* (C.A. 2, 1981), 643 F.2d 914, 920-921; *Smith v. Univ. of North Carolina* (C.A.4, 1980), 632 F.2d 316, 335; *Loeb v. Texton, Inc.* (C.A. 1, 1979), 600 F.2d 1003, 1017.

{¶ 30} Accordingly, we now clarify that the phrase "Absent direct evidence of age discrimination," as used in *Kohmescher, supra*, at the syllabus, refers to a method of proof, not a type of evidence. It means that a plaintiff may establish a prima facie case of age discrimination directly by presenting evidence, of any nature, to show that the employer more likely than not was motivated by discriminatory intent.

{¶ 31} Mauzy further argues that pursuant to *Kohmescher*, where there is direct evidence of discriminatory animus, "summary judgment is inappropriate, regardless whether the separation from employment is styled a termination, a resignation or a constructive discharge." Indeed, Justice Holmes similarly characterized the holding of *Kohmescher*: "This newly adopted test is that even the slightest bit of evidence of age discrimination adduced by the plaintiff obviates the necessity to prove that the plaintiff was discharged * * *." *Kohmescher, supra*, 61 Ohio St.3d at 507, 575 N.E.2d at 443 (Holmes, J., dissenting). We, however, disagree.

{¶ 32} Evidence of discriminatory intent is nothing more than proof of discriminatory thought. Former R.C. 4101.17, like Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, Section 2000*e et seq*., Title 42, U.S. Code, is not a thought control law. As Justice O'Connor explained:

"[Title VII was meant] to eradicate discriminatory actions in the employment setting, not mere discriminatory thoughts. Critics of the bill that became Title VII labeled it a 'thought control bill,' and argued that it created a 'punishable crime that does not require an illegal external act as a basis for

14

judgment.' 100 Cong.Rec. 7254 (1964) (remarks of Sen. Ervin). Senator Case * * * responded:

"'The man must do or fail to do something in regard to employment. There must be some specific external act, more than a mental act. Only if he does the act because of the grounds stated in the bill would there be any legal consequences.'" *Price Waterhouse, supra*, 490 U.S. at 262, 109 S.Ct. at 1797, 104 L.Ed.2d at 295-296.

{¶ 33} Thus, while proof of discriminatory thought is necessary to the establishment of a discrimination claim, it is not sufficient. There must be a consequential prohibited act. The prohibited act under former R.C. 4101.17, as relevant here, is a "discharge." Other actions, such as transfers or promotions, are not prohibited unless they amount to a "discharge." This is a legislative choice that we cannot disturb.

{¶ 34} It is true, as Mauzy urges, that direct evidence of discriminatory animus eschews reliance on the prima facie four-element test of *Barker* and *Kohmescher, supra*. This does not mean, however, that a mandate of the statute may be ignored simply because it happens to be one of the elements of a prima facie case set forth in those cases. Direct evidence of discriminatory thought no more obviates the statutory requirement that plaintiff be discharged than it does the statutory requirement that the plaintiff fall within the protected age group. To hold as Mauzy suggests would result in rewriting the statute or, worse, prohibiting mere thought.

{¶ 35} Thus, irrespective of which method is utilized to establish discriminatory intent, plaintiff must show that she was "*discharged* on account of age." (Emphasis added.) *Kohmescher, supra*, 61 Ohio St.3d at 505, 575 N.E.2d at 442.

{¶ 36} Mauzy also contends that her burden to show that she was discharged is satisfied by MacKinnon's statement that Mauzy "left us no

alternative but to terminate her [Mauzy's] employment." According to Mauzy, "[i]t is the termination, not the reason for it, that allows the *prima facie* case."

{¶ 37} In a general sense, Mauzy is correct; disputing the employer's alleged legitimate, nondiscriminatory reason for discharging a plaintiff is not a requirement of the prima facie case. However, when a plaintiff chooses termination in lieu of transfer, her decision is not construed as an actual discharge. Instead, she is required to show as a part of her prima facie case that her choice to be terminated was involuntary or coerced. *Kohmescher, supra*, 61 Ohio St.3d at 506, 575 N.E.2d at 443; *Barker, supra*, 6 Ohio St.3d at 148, 6 OBR at 204, 451 N.E.2d at 810. Mauzy can stand on no better footing by refusing her transfer assignment in the face of termination, than do employees who elect termination in lieu of transfer. Former R.C. 4101.17 proscribes discriminatory discharges, not transfers. It cannot be transformed into a palliative for every unattractive workplace transfer by the simple expedient of refusing the assignment. See *Bristow v. Daily Press, Inc.* (C.A.4, 1985), 770 F.2d 1251, 1255.

{¶ 38} Since Mauzy in effect chose termination over transfer, she must show that her decision was involuntary or, as the doctrine is more familiarly known, that she was constructively discharged. See *Clowes v. Allegheny Valley Hosp.* (C.A.3, 1993), 991 F.2d 1159, 1160-1161. Courts generally apply an objective test in determining when an employee was constructively discharged, *viz.*, whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign.[4] *Id.*, 991 F.2d at 1161; *McCann v. Litton Systems, Inc.* (C.A.5, 1993),

---

4. Not all of the federal circuits agree on the legal standards by which to determine whether a constructive discharge has occurred. See *Levendos v. Stern Entertainment, Inc. (C.A.3, 1988),* 860 F.2d 1227, 1230-1231. The objective standard appears to be more consonant with the purpose of the prima facie case to raise an inference of discrimination. To require proof that the employer's actions were deliberately aimed at forcing resignation transcends the design of the

986 F.2d 946, 951; *Stephens v. C.I.T. Group/Equipment Financing, Inc.* (C.A.5, 1992), 955 F.2d 1023, 1027; *Spulak v. K Mart Corp.* (C.A.10, 1990), 894 F.2d 1150, 1154; *Levendos v. Stern Entertainment, Inc.* (C.A.3, 1988), 860 F.2d 1227, 1230-1231.

{¶ 39} In applying this test, courts seek to determine whether the cumulative effect of the employer's actions would make a reasonable person believe that termination was imminent. They recognize that there is no sound reason to compel an employee to struggle with the inevitable simply to attain the "discharge" label. No single factor is determinative. Instead, a myriad of factors are considered, including reductions in sales territory, poor performance evaluations, criticism in front of coemployees, inquiries about retirement intentions, and expressions of a preference for employees outside the protected group. Nor does the inquiry change solely because an option to transfer is thrown into the mix, lateral though it may be. A transfer accompanied by measurable compensation at a comparable level does not necessarily preclude a finding of constructive discharge. Our review is not so narrowly circumscribed by the quality and attributes of the transfer option itself. A sophisticated discriminating employer should not be permitted to circumvent the statute by transferring an older employee to a sham position as a prelude to discharge. See *Stephens, supra; Guthrie v. J.C. Penney Co., Inc.* (C.A.5, 1986), 803 F.2d 202; *Crawford v. ITT Consumer Financial Corp.* (D.C.Ohio 1986), 653 F.Supp. 1184; *Schneider v. Jax Shack, Inc.* (C.A.8, 1986), 794 F.2d 383; *Goss v. Exxon Office Systems Co.* (C.A.3, 1984), 747 F.2d 885; *Jacobson v. Am. Home Products Corp*. (D.C.Ill. 1982), 36 FEP Cases 559; Annotation, Circumstances Which Warrant Finding of Constructive Discharge Under Age Discrimination

---

prima facie case. We note, however, that the result we reach in this case would not be affected by the application of a subjective standard.

in Employment Act (29 USCS §§ 621 *et seq.*) (1989), 93 A.L.R.Fed. 10, Sections 9-16.

{¶ 40} Applying the law as set forth above to the facts of this case, we conclude that summary judgment was improperly granted in favor of Hart and Kelly because of the existence of a genuine issue of material fact over whether Mauzy was constructively discharged on account of her age. Under the record developed in the trial court, there is evidence showing that Mauzy met with great success over the years in her position as resident branch manager at Kelly's Mentor branch. When Hart took over as Mauzy's supervisor, she expressed her preference for younger employees, inquired into Mauzy's plans to retire, and told her to "take the money and run." She berated Mauzy in front of her coworkers, gave her negative evaluations, reduced her staff and territory, introduced a younger employee to Mauzy's key customers, and noted in Mauzy's final evaluation that "you can't teach an old dog new tricks." Subsequently, she sought to transfer Mauzy to a position that was newly created, and which was never filled following Mauzy's separation from employment, while replacing Mauzy with a younger employee with a lower rating. Although appellees' version of the events is markedly different, in our view reasonable minds could conclude from the evidence that appellees were motivated by discriminatory animus and that Mauzy was constructively discharged from her employment. Thus, Mauzy has presented sufficient evidence to raise an inference of age discrimination under former R.C. 4101.17.

{¶ 41} Accordingly, the decision of the court of appeals is reversed as to this issue.

## II

{¶ 42} The second issue presented for determination involves the trial court's denial of Mauzy's requests for further discovery. The facts relevant to this issue are as follows. On February 23, 1993, the trial court entered a pretrial

order indicating that discovery had been completed. Following several continuances, appellees filed their motion for summary judgment on April 6, 1993. On April 29, 1993, Mauzy's previous counsel filed a motion to extend the time to respond to appellees' motion for summary judgment and to withdraw as Mauzy's counsel of record, which the trial court granted on May 4, 1993.

{¶ 43} On May 13, 1993, Mauzy's present counsel filed a motion for a stay of proceedings, stating that "[i]n order to properly undertake represent[ation] * * * [he] would require a * * * period of time to become completely familiar with the file and perform certain discovery which is necessary to properly respond to the summary judgment motion." On June 22, 1993, the trial court granted a stay of sixty days and scheduled a pretrial conference for August 23.

{¶ 44} During July and August 1993, Mauzy's new counsel attempted to schedule depositions pursuant to Civ.R. 30(B)(4) and (5), seeking a number of documents and to depose Pamela Vaughn. Appellees responded by filing a motion for a protective order. On August 23, 1993, the trial court entered an order prohibiting Mauzy from proceeding with the depositions, noting that "the discovery deadlines * * * have long since passed."

{¶ 45} On August 24, Mauzy filed a motion pursuant to Civ.R. 56(F) "to complete discovery in this action in order to adequately respond to the pending summary judgment." She also argued, however, that further discovery "is necessary to the presentation of the merits of her claim." In particular, she sought to depose certain individuals, including her replacement, concerning the issues of discriminatory intent, replacement by a younger employee and the closing of the Mayfield office. On August 27, 1993, the trial court denied Mauzy's request for further discovery on the basis that it had already given Mauzy a reasonable opportunity to conduct discovery when it stayed the proceedings on June 22 for sixty days, "thereby allowing Plaintiff's counsel an

opportunity to review the file [and] engage in discovery." The court did indicate, however, that "[d]ue to any misinterpretation of the Court's prior order, the Court will grant Plaintiff an additional leave to 12:00 noon, September 3, 1993," apparently to respond to appellees' motion for summary judgment. Mauzy filed her brief in opposition to appellees' summary judgment motion on September 2.

{¶ 46} On September 15, appellees requested a continuance of the trial date along with a motion by their former counsel to withdraw as counsel of record. The motion was necessitated by Mauzy's allegations that prior counsel for appellees had destroyed a key piece of evidence. See fn. 1. On October 6, the court granted appellees' counsel's motion to withdraw.

{¶ 47} On December 29 and 30, Mauzy again requested additional discovery in light of the rescheduling of the trial date until April 1994. On January 18, 1994, the trial court denied this request and entered summary judgment in favor of appellees.

{¶ 48} The court of appeals held that:

"It is apparent from the record that appellants were afforded ample time within which to conduct discovery. Furthermore, it does not appear that the requested discovery would have affected the disposition of the summary judgment motion, as that motion was decided upon appellant's failure to prove that she was discharged, as required by *Kohmescher* to establish a prima facie case. Appellants' proffered discovery dealt with the issue of age bias, which is irrelevant under R.C. 4101.17 unless the employee was discharged. See *Kohmescher, supra*. As a result, appellants have failed to demonstrate that the trial court abused its discretion * * *."

{¶ 49} In light of our holding that summary judgment was improper under the record as presently developed, it is no longer of any concern whether "the requested discovery would have affected the disposition of the summary judgment motion." Accordingly, the issue of whether the trial court abused its

20

discretion in denying Mauzy's motion for discovery pursuant to Civ.R. 56(F) is moot. Civ.R. 56(F) operates only when it appears that the nonmoving party cannot present facts essential to justify opposition to a motion for summary judgment. Such a situation can no longer be said to exist.

{¶ 50} Thus, the only issue that confronts us is whether the trial court unreasonably denied Mauzy the pretrial opportunity to fully prepare her case for litigation.

{¶ 51} "In discovery practices, the trial court has a discretionary power not a ministerial duty." *State ex rel. Daggett v. Gessaman* (1973), 34 Ohio St.2d 55, 57, 63 O.O.2d 88, 90, 295 N.E.2d 659, 661. Thus, the standard of review of a trial court's decision in a discovery matter is whether the court abused its discretion. See *Heat & Control, Inc. v. Hester Industries, Inc.* (C.A. Fed. 1986), 785 F.2d 1017, 1022.

{¶ 52} Such discretion, however, is not without limits. Although unusual, appellate courts will reverse a discovery order "when the trial court has erroneously denied or limited discovery." 8 Wright, Miller & Marcus, Federal Practice & Procedure (2 Ed. 1994) 92, Section 2006. Thus, "[a]n appellate court will reverse the decision of a trial court that extinguishes a party's right to discovery if the trial court's decision is improvident and affects the discovering party's substantial rights." *Rossman v. Rossman* (1975), 47 Ohio App.2d 103, 110, 1 O.O.3d 206, 210, 352 N.E.2d 149, 153-154. See, also, *Stegawski v. Cleveland Anesthesia Group, Inc.* (1987), 37 Ohio App.3d 78, 86, 523 N.E.2d 902, 910; *Smith v. Klein* (1985), 23 Ohio App.3d 146, 151, 23 OBR 387, 393, 492 N.E.2d 852, 858; *Simmons v. Merrill Lynch, Pierce, Fenner & Smith* (1977), 53 Ohio App.2d 91, 97, 7 O.O.3d 65, 69, 372 N.E.2d 363, 368; *Toledo Edison Co. v. GA Technologies, Inc.* (C.A.6, 1988), 847 F.2d 335, 341; *Weahkee v. Norton* (C.A.10, 1980), 621 F.2d 1080, 1082 (employment discrimination action); *Goldman v. Checker Taxi Co.* (C.A.7, 1963), 325 F.2d 853, 856; Wright,

Miller & Marcus, Federal Practice & Procedure, *supra*, at 92-93, fn. 33, Section 2006; Annotation (1977), 31 A.L.R.Fed. 657.

{¶ 53} In his May 13, 1993 motion for a stay of proceedings, Mauzy's substitute counsel indicated that he would need to conduct further discovery in order to properly undertake representation of Mauzy. There is nothing in the record to suggest that this request was interposed as a dilatory tactic. The record discloses that further discovery was warranted in order to fully prepare to litigate the issues of discriminatory animus and constructive discharge, and that the discovery that had already been conducted was not overburdensome. Moreover, the initial request for additional discovery was not raised, as appellees suggest, at the "eleventh hour." The motion for summary judgment was not ruled upon until January 18, 1994, with trial having been reset for some time thereafter. Under these circumstances, we hold that it is improvident to deny further discovery to Mauzy's substitute counsel.

{¶ 54} The trial court's order of August 27, standing alone, creates the illusion that Mauzy's second counsel was given the opportunity to conduct additional discovery. That order denied Mauzy's request for further discovery on the purported basis that the court had already granted a sixty-day stay to afford Mauzy's second counsel "an opportunity to * * * engage in discovery." Yet, when Mauzy's substitute counsel had attempted discovery during that period, he was met by the trial court's August 23 order prohibiting the attempted discovery on the basis that "the discovery deadlines * * * have long since passed." These incongruous orders effectively denied Mauzy the opportunity to fully prepare her cause for litigation.

{¶ 55} Accordingly, we conclude that the trial court abused its discretion in denying Mauzy further discovery, and the decision of the court of appeals is reversed as to this issue.

**{¶ 56}** In light of all the foregoing, the judgment of the court of appeals is reversed, and the cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

*Judgment reversed*

*and cause remanded.*

DOUGLAS, HILDEBRANDT, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., and COOK, J., dissent.

LEE H. HILDEBRANDT, JR., J., of the First Appellate District, sitting for WRIGHT, J.

_____

**COOK, J., dissenting.**

**{¶ 57}** I respectfully dissent. My disagreement is particularly with the stated proposition that "direct" evidence is a method of proof rather than a type of evidence, and with the conclusion that it is a factual question whether Mauzy's lateral transfer can amount to a constructive discharge.

DIRECT EVIDENCE

**{¶ 58}** The law is settled that direct evidence of discrimination obviates the necessity of raising an inference of discrimination through a *McDonnell Douglas* showing of a prima facie case. The court of appeals was correct in referring to Black's Law Dictionary to define the term "direct evidence" as used in the *Kohmescher* syllabus. *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 575 N.E.2d 439. That case had it right in terms of the relationship between direct evidence of discrimination (such as documents disclosing the employer's use of age as a criterion for employment decisions) and the alternative, prima facie showing through a *McDonnell Douglas* presentation.

CONSTRUCTIVE DISCHARGE

**{¶ 59}** Mauzy chose to sue her employer under R.C. 4101.17, which prohibits discharges on the basis of age. Taking all of Mauzy's testimony on the

issue of her termination as true, as a matter of law, Mauzy was not discharged. The majority concedes that in order to establish that she was constructively discharged, Mauzy must show that her employer made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign. The evidence, construed in Mauzy's favor, amounts to the following: Hart had an unjustified, negative, discriminatory attitude toward Mauzy which motivated the transfer decision. That is it. Hart's discriminatory attitude is not actionable under R.C. 4101.17. Hart's *action* is the transfer. This action is not prohibited by R.C. 4101.17, even if it is motivated by a discriminatory animus. What is prohibited is a discriminatory transfer that equates to a discharge.

{¶ 60} As a matter of law, Mauzy's transfer cannot be said to equate to a discharge. She must show that the transfer rendered the working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign. The transfer was to a new position in a different branch office, in the same locale (*i.e*., greater Cleveland), at the same compensation level. Indeed, Mauzy never even worked one day under the working conditions of the new job to which she was assigned. The majority seems to go beyond the evidence presented in the summary judgment proceedings in implying that the new position offered to Mauzy was a sham, just a prelude to discharge. Under the circumstances of this case, involving no change of residence or other such "detrimental reliance," it would be pure speculation to label the voluntary relinquishment of the transfer a constructive discharge on the untested assessment that the position was a sham.

{¶ 61} Although Mauzy may have legitimately resented the overtones of her dealings with Hart, Hart did not fire her, did not insist Mauzy accept a transfer across the country as in *Kohmesche*r, and did not even reduce Mauzy's pay or her status as a management employee. Whatever unlawful attitude Hart may have harbored and displayed, it is only her decisions as to Mauzy's employment that are actionable, and under R.C. 4101.17, only discharge decisions.

DISCOVERY

**{¶ 62}** I would affirm the judgment of the court of appeals on the discovery issue because, like that court, I find that the requested discovery would not have affected the issue of whether or not Mauzy was discharged.

**{¶ 63}** For the foregoing reasons, summary judgment was properly granted and I would affirm the judgment of the court of appeals.

MOYER, C.J., concurs in the foregoing dissenting opinion.

_____