OPINION
{¶ 1} This case is before this Court on Plaintiff-Appellant Linden P. Carter's appeal from a trial court decision granting summary judgment to the Defendant-Appellee Elano Corporation.
 {¶ 2} In January, 1990 Elano Corporation hired Linden Carter to work in its Beavercreek Plant, and for the next ten years his employment continued uneventfully. That changed on the night of March 8, 2000 when Carter saw co-workers Mike Smith, Brian Martin, and Chuck Johnson in the plant's parking lot with a rifle. Later that night Carter saw Smith and Martin inside the plant with the rifle. Carter called his supervisor William Carroll, who came to the plant. Smith and Martin lost their jobs as a result of the incident. Fearing reprisals, Carter asked Carroll that his name not be released. Carroll agreed. Elano implemented several procedures in order to ease any anxiety that employees may have felt due to the rifle being brought into the workplace.
 {¶ 3} Over the next couple of months, Carroll reiterated with Carter the agreement to keep Carter's name confidential. However, during that time Johnson repeatedly asked Carroll who had reported the incident. Carroll refused to reveal Carter's name until August 20, 2000. The next day Johnson confronted Carter with this information. Although Johnson did not threaten Carter, and Carter said that he was not afraid of Johnson, Carter claimed that he felt threatened by Johnson`s tone and demeanor. During the remainder of his shift, Carter realized that the information was common knowledge, and he felt ostracized and isolated.
 {¶ 4} The following day Carter asked for and was given a leave of absence. During the three-week leave, Carter reported no threats or contact from Smith, Martin, or Johnson. Attempting to resolve the situation, Elano offered to transfer Carter to another shift, but Carter refused. Claiming that there was no way for Elano to remedy the situation, Carter chose not to return to work, and he was terminated in September, 2000.
 {¶ 5} Although Carter denied that anyone ever threatened him, he claimed that he had an ongoing fear for himself and his family. Carter offered two reasons for his fear: (1) co-worker Don Horn told Carter that he heard Smith say that "somebody's ass is going to pay . . ." on the night that he was fired; and (2) the confrontation with Johnson on August 21, 2000.
 {¶ 6} Carter filed suit against Elano claiming that he had been wrongfully discharged. Elano filed a motion for summary judgment, which the trial court granted, and Carter filed this timely appeal.
 {¶ 7} Carter raises two assignments of error, which we shall discuss together.
 {¶ 8} "IT IS ERROR FOR THE TRIAL COURT TO FIND THAT `NO REASONABLE JURY COULD CONCLUDE THAT CARTER WAS JUSTIFIED IN HIS IMMEDIATE CONCLUSION AND CONTINUED BELIEF THAT HE WAS IN DANGER IF HE RETURNED TO ELANO' UPON THE DISCLOSURE BY DEFENDANTS THAT CARTER WAS THE ONE WHO MADE THE PHONE CALL THAT LED TO THE FIRING (RESIGNATION ACCEPTED) OF THE EMPLOYEES WHO BROUGHT AN ASSAULT RIFLE INTO THE WORKPLACE.
 {¶ 9} "IT IS ERROR FOR THE TRIAL COURT TO ASSUME AS A STANDARD OF CONSTRUCTIVE DISCHARGE WHETHER PLAINTIFF WAS UNDER THE `BELIEF THAT HE WAS IN DANGER IF HE RETURNED TO ELANO' RATHER THAN USING ONE OF THE STANDARDS SANCTIONED BY CASE LAW SUCH AS `IF A REASONABLE PERSON UNDER THE SAME OR SIMILAR CIRCUMSTANCES WOULD CONSIDER THE WORKING CONDITIONS SO INTOLERABLE AS TO BE COMPELLED TO RESIGN' OR THAT A REASONABLE PERSON IN HIS OR HER POSITION SUFFERED WORKING CONDITIONS SO INTOLERABLE THAT HE OR SHE FELT COMPELLED TO RESIGN."
 {¶ 10} Carter argues that the trial court erred in granting summary judgment for Elano. In support, he claims that the trial court was not justified in concluding that no reasonable jury could have found that an objectively reasonable person in Carter's position would have felt compelled to resign. We disagree.
 {¶ 11} As this Court has previously noted, an appellate court's review of a summary judgment decision is de novo. See, e.g., Hurt v. BankOne, Dayton, NA (1998), 129 Ohio App.3d 523, 525, 718 N.E.2d 485, citingTokai v. Bank of California, et al. (1996), 114 Ohio App.3d 116, 119,682 N.E.2d 1052. Thus, in reviewing a summary judgment decision, an appellate court, like the trial court, must apply the standard found in Civ.R. 56. According to Civ.R. 56 a trial court should grant summary judgment only when the following three-part test has been satisfied: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmoving party, and that conclusion is adverse to the party against the nonmoving party. See, Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66, 375 N.E.2d 46; State ex rel. Cassels v. Dayton CitySchool Dist. Bd. of Edn., 69 Ohio St.3d 217, 219, 1994-Ohio-92.
 {¶ 12} Carter's wrongful termination argument is based upon a claim of constructive discharge. An individual is constructively discharged when his employer's actions made his working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign. Mauzy v. Kelly Services, Inc., 75 Ohio St.3d 578,588-89, 1996-Ohio-265, citations omitted. Additionally, the employee must show that "`the cumulative effect of the employer's actions would make a reasonable person believe that termination was imminent.'" Mayo v.Kenwood Country Club, Inc. (1999), 134 Ohio App.3d 336, 342,731 N.E.2d 190, quoting Mauzy, supra, at 589. However, it must also be remembered that "`part of an employee's obligation to be reasonable is an obligation not to assume the worst, and not to jump to conclusions too fast.'" Mayo, supra, quoting Garner v. Wal-Mart Stores, Inc. (C.A. 11, 1987), 807 F.2d 1536, 1539.
 {¶ 13} While Carter made the right decision in reporting the rifle at the plant, he must take responsibility for that decision. When he made the call, he had no reason to believe that his identity would be confidential. Although Carroll did promise to keep Carter's name confidential, Carter had no reason to believe that it would remain so indefinitely. Carroll's ultimate decision to give into Johnson's pressure was not enough to make Carter's working conditions intolerable.
 {¶ 14} Carter's sole reason for choosing not to return to work is Carroll's confession of Carter's name to Johnson five months after the rifle incident. The following day Carter asked for and received a leave of absence. During that time, Carter received no threats of any kind. Nevertheless, Elano offered Carter a position on a different shift, which he declined. Instead, Carter chose not to return to work.
 {¶ 15} Neither Johnson's confrontation nor Carter's feeling shunned for a few hours is sufficient to demonstrate that his working conditions were so intolerable that he would reasonably have felt compelled to resign. Nor did anything cause Carter to believe that his termination was imminent. Instead, Carter jumped to the conclusion that he could no longer work at Elano without giving the situation a chance to resolve itself. We cannot conclude that a reasonable person in Carter's situation would have felt compelled to resign.
 {¶ 16} For these reasons the trial court did not err in granting summary judgment for Elano. Carter's assignments of error are without merit and are overruled. Accordingly, the judgment of the trial court is affirmed.
FAIN, J., and GRADY, J., concur.