NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0058n.06

No. 20-3680

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ROBERT TAGLIONE,

     **Plaintiff-Appellant,**

v.

CHARTER COMMUNICATIONS,
LLC,

     **Defendant-Appellee.**

FILED
Jan 28, 2021
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF
OHIO

BEFORE:    CLAY, GILMAN, and THAPAR, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiff Robert Taglione appeals the district court's grant of summary judgment in favor of Defendant Charter Communications, LLC ("Charter") on his age-discrimination claims under Ohio Rev. Code § 4112.99 and § 4112.14. For the reasons set forth below, we **AFFIRM** the district court's grant of summary judgment.

BACKGROUND

During the relevant time period, Taglione (age 54), Nancy Baker (age 57), Andrew Lucas (age 57), Rhonda Hatfield (age 57), and John Walker (age 34) worked as Inbound Sales ("IBS") Managers at Charter (formerly Time Warner Cable) at its Call Center in Columbus, Ohio. In the Inbound Sales Department, agents would take incoming calls from consumers seeking to purchase Internet, cable TV, or phone service.

In July 2017, Ron Johnson (age 61) became the new Vice President of Inbound Sales at the Columbus Call Center. A few months into his time as VP of IBS, Johnson allegedly became

harsh and dismissive, often cutting off the IBS Managers when they tried to speak at meetings. During these meetings, Johnson would become angry and use profanity when speaking to the managers. He also would interrupt the managers' meetings with those they supervised, in which he would talk over and contradict the managers.

Around the office, Johnson used the term "Old Columbus," and he often remarked that he wanted "new blood," "fresh ideas," and "creativity" at the Columbus Call Center and that he needed to "get rid of the barnacles," (R. 38-1, Walker Dep. at PageID # 856–57; R. 39-2, Lucas Decl. at PageID # 928), which were viewed as references to those who were "legacy" Time Warner Cable employees. (R. 35-2, Taglione Dep. at PageID # 466.) And in one-on-one meetings with managers, he would tell them that "jobs are on the line," which seemed to refer to all of the team's jobs being on the line if the Columbus Call Center did not improve its performance. (R. 39-1, Baker Decl. at PageID # 913.)

In December 2017, Walker took an open business-analyst position at the center, and Johnson hired Laura Ray (age 46) to replace Walker as an IBS Manager. Plaintiff alleges that Ray seemed to be treated better by Johnson than other managers—he would "vocally valu[e] her opinions even when those opinions were the same opinions he had shot down when expressed by the older Managers (Baker, Lucas, and [Taglione])." (R. 39-3, Taglione Decl. at PageID # 933.) At that point, Johnson decided to switch the managers working on the day and night shifts, noting that the day-shift teams were performing far better than the night shift teams. Baker and Hatfield were moved to the night shift, Ray and Taglione were reassigned to the day shift, and Lucas took on a split shift where he would work from 10:00 AM to 7:00 PM during the week and from 2:00 PM to 11:00 PM on Saturday, with days off on Wednesday and Sunday.

On January 25, 2018, Lucas filed an anonymous complaint with Charter against Johnson, alleging that Johnson had "created a hostile work environment." (R. 34-3, Exh. C at PageID # 258.) In February 2018, both Hatfield and Baker filed complaints against Johnson for creating a hostile work environment and engaging in age discrimination. Charter conducted an investigation into these complaints; Charter could not corroborate the age-discrimination allegations, but "was able to confirm that Johnson had behaved unprofessionally/inappropriately towards certain members of his staff and that morale is low as many people are 'fearful' of their jobs due to constant threats from leadership." (R. 40-1, Exh. 1 at PageID # 956–57.) Johnson was then placed on a Performance Improvement Plan ("PIP"). In March 2018, Hatfield was promoted to Director of Inbound Sales, and the IBS Managers began reporting directly to her, while Johnson took a step back from directly supervising them.

As Director, Hatfield became more involved in monitoring the IBS Managers' performances. On May 4, 2018, Hatfield told Taglione to put one of the supervisors on his team on a PIP, after which Hatfield proceeded to give Taglione a "Development Plan." (R. 39-3, Taglione Decl. at PageID # 934.) While it was not placed in Taglione's formal personnel file, the plan addressed his need for improvement in the key performance areas of "facilitat[ing] effective communications" with his team and "develop[ing] a high-performing team." (R. 36-2, Joint Dep. Exhs. at PageID # 743–44.) Taglione was surprised by the plan, given that he had been praised in previous performance reviews for his teaching and communication ability and that he had some of the best numbers among the Columbus Call Center managers. Despite the plan mentioning the need for weekly progress meetings, Hatfield did not meet with Taglione until May 25, 2018, during which Hatfield told Taglione that he was going to be placed on a PIP.

Based on his knowledge of Baker's previous experience with her PIP and concern about losing his health insurance due to family health issues,[1] Taglione applied for lateral positions at Charter, including Direct Sales Manager—for which he was not selected—as well as Account Executive.[2] Taglione ultimately applied for and accepted a position as a Direct Sales Representative on June 22, 2018, which was a demotion from his position as IBS Manager. Taglione eventually resigned from Charter on December 15, 2018. He was replaced by Ben Jones (between 40 and 50 years of age) as IBS Manager.

On January 11, 2019, Taglione, Baker,[3] and Lucas[4] jointly filed a complaint in the Franklin County Common Pleas Court against Charter for age discrimination under Ohio Rev. Code § 4112.99 and sought monetary damages. Charter removed the complaint to the Southern District of Ohio based on diversity jurisdiction.

Charter moved for summary judgment on all claims, which the district court granted. The district court concluded that Taglione's allegation of "constructive demotion" was not actionable under Ohio Rev. Code § 4112.14 based on the statutory text; therefore, Taglione could not proceed on his age-discrimination claim under that provision based on his alleged constructive demotion to Direct Sales Representative. The court also found that Taglione's age-discrimination claim based on a failure-to-hire theory could not withstand summary judgment. The court found that although Taglione presented evidence that could be viewed as age discrimination, he did not

---

[1] Baker resigned from Charter at the end of May 2018 after being placed on a PIP by Hatfield.

[2] Charter deemed his application for Account Executive withdrawn when he subsequently accepted the Direct Sales Representative position.

[3] Plaintiffs Taglione and Lucas later filed an amended complaint, which was unopposed by Charter, in order to remove Baker as a plaintiff because she had chosen to proceed with her claims through arbitration with Charter.

[4] Andrew Lucas is no longer a party in this litigation because he was voluntarily dismissed pursuant to a stipulation by all parties.

establish a causal link between his denied transfers and the alleged age discrimination.[5] This timely appeal followed.

## DISCUSSION

We review "a district court's grant of summary judgment *de novo*." *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015). Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

On appeal, Taglione argues that the district court erred in finding that constructive demotion was not covered under Ohio Rev. Code § 4112.14. He contends that the district court erroneously limited the scope of the provision to age discrimination that culminates in a discharge or job opening and that it failed to consider a demotion as a form of discharge.

Ohio law includes two substantive provisions, Ohio Rev. Code § 4112.02 and Ohio Rev. Code § 4112.14, that proscribe age discrimination. Although an employee can proceed with an age-discrimination suit under either statutory provision, § 4112.14 prohibits plaintiffs from maintaining a suit under both § 4112.02 and § 4112.14; therefore, they must elect to proceed under one of the provisions. Ohio Rev. Code § 4112.14(B) ("[A]ny person instituting a civil action under this section is, with respect to the practices complained of, thereby barred from instituting a civil

---

[5] On appeal, Taglione fails to provide any argument as to why he has established a prima facie case of age discrimination based on Charter failing to hire Taglione for one of these transfer positions, solely focusing on his constructive demotion to Direct Sales Representative. We have previously held that "arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived" on appeal. *Kuhn v. Washtenaw County*, 709 F.3d 612, 624 (6th Cir. 2013). The only time Taglione mentions the denied transfer applications in the argument section of the opening brief is in his discussion of what discriminatory acts are prohibited under § 4112.14. (*See* Appellant Br. at 23 ("Taglione was refused an essentially lateral management opening for which he was plainly qualified by previous experience and performance at that same job. No 'just cause' was cited by Charter for this denial. This is yet another violation of O.R.C. § 4112.14(A) and (B) regarding 'job openings.'" (internal citations omitted)).) Accordingly, we conclude that he has forfeited his age-discrimination claim based on the failure to hire.

action under division (L) of section 4112.02 of the Revised Code . . . ."). Additionally, Ohio age-discrimination law also has a "gap-filling provision," which provides that "[w]hoever violates this chapter is subject to a civil action for damages, injunctive relief, or any other appropriate relief." Ohio Rev. Code § 4112.99. While plaintiffs can formally file age-discrimination suits under this provision, because § 4112.99 does not specifically enumerate forms of age discrimination that are actionable under the provision, their claims are still "subject to the substantive provisions of R.C. 4112.02 and 4112.14." *Meyer v. United Parcel Serv., Inc.*, 909 N.E.2d 106, 112 (Ohio 2009).

In the present case, Taglione formally alleged age discrimination under Ohio Rev. Code § 4112.99 but is proceeding under the substantive provision, § 4112.14, because he filed his complaint after the 180-day statute-of-limitations period in § 4112.02.[6] Under § 4112.02, it is unlawful for an employer, based on a person's "race, color, religion, sex, military status, national origin, disability, age, or ancestry," to "discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio Rev. Code § 4112.02(A). This provision "does not limit claims of discrimination to wrongful discharge or refusal to hire, but, rather, allows claims for discrimination for a broad spectrum of employer actions." *Samadder v. DMF of Ohio, Inc.*, 798 N.E.2d 1141, 1149–50 (Ohio Ct. App. 2003); *see also Coryell v. Bank One Trust Co, N.A.*, No. 07AP-766, 2008 WL 2308769, at *9 (Ohio Ct. App. June 5, 2008) ("[T]his and other Ohio courts have recognized that a plaintiff may state an actionable claim of discrimination, pursuant to R.C. 4112.02, in the absence of termination.").

---

[6] § 4112.02 requires that the suit be filed "within one hundred eighty days after the alleged unlawful discriminatory practice occurred." Ohio Rev. Code § 4112.02(L). In contrast, § 4112.14 has been interpreted to carry a six-year statute of limitations. *Ahern v. Ameritech Corp.*, 739 N.E.2d 1184, 1202 (Ohio Ct. App. 2000); *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 518 (6th Cir. 2001).

In contrast, § 4112.14 specifically states that "[n]o employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee." Ohio Rev. Code § 4112.14(A). In interpreting the scope of "discharge" under this provision, the Ohio Supreme Court has held that "[o]ther actions, such as transfers or promotions, are not prohibited unless they amount to a 'discharge,'" which the court described as "a legislative choice that we cannot disturb." *Mauzy v. Kelly Services, Inc.*, 664 N.E.2d 1272, 1280 (Ohio 1996); *see also Hawley v. Dresser Indus., Inc.*, 737 F. Supp. 445, 455 (S.D. Ohio 1990), *abrogated on other grounds by Humphreys v. Bellaire Corp.*, 966 F.2d 1037 (6th Cir. 1992) (finding that "discriminatory demotion is not actionable under section 4101.17," now section 4112.14, "because its plain language imposes liability only for hiring and termination decisions," and noting that "[d]emotion is an event which is distinct from a failure to promote").

The alleged constructive demotion at issue in the present case is distinct from an involuntary demotion that is actionable under § 4112.14 as a constructive discharge when the forced demotion makes the employee terminate their employment. In describing what employer actions amount to a "discharge," the Ohio Supreme Court noted in *Mauzy* that a constructive discharge occurs when "the employer's actions ma[ke] working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign." 664 N.E.2d at 1280–81. In *Mauzy*, the Ohio Supreme Court found that there was a genuine dispute of material fact whether the plaintiff was constructively discharged because of her age when she chose termination over an involuntary transfer. 664 N.E.2d at 1281. The court noted that "[a] sophisticated discriminating employer should not be permitted to circumvent the statute by

transferring an older employee to a sham position as a prelude to discharge," which could reasonably indicate that termination was imminent. *Id.*

In contrast, in the present case, Taglione is arguing that the working conditions at Charter were such that he felt compelled to apply for and accept a demotion into a nonmanagerial position. This alleged constructive demotion constitutes the kind of transfer that the Ohio Supreme Court indicated in *Mauzy* was not actionable under § 4112.14. Because of the language in § 4112.14 and the Ohio Supreme Court's decision in *Mauzy*, constructive demotion, in which an individual feels compelled to request and accept a different position rather than end their employment, is not actionable under § 4112.14 as a discharge, and Taglione cannot proceed under § 4112.14 based on a constructive-demotion theory.

In his opening brief, Taglione has failed to provide any citation to an Ohio state-court decision that contradicts the interpretation of § 4112.14 provided by the Ohio Supreme Court in *Mauzy*. Instead, he argues that demotion counts as discharge under this provision by citing to cases outside of Ohio interpreting the term "discharge" in the context of other inapposite statutes. Given the clear mandate from the Ohio Supreme Court on the proper interpretation of § 4112.14, and the fact that we are acting under diversity jurisdiction in deciding the instant case, we cannot disturb the interpretation of the term "discharge" from *Mauzy* based on the nonbinding decisions cited by Taglione. *See Ziegler*, 249 F.3d at 517 ("In diversity cases, the federal courts must apply state law 'in accordance with the then controlling decision of the highest state court.'" (internal quotation marks removed) (quoting *United States v. Anderson County*, 761 F.2d 1169, 1173 (6th Cir.1985))). Therefore, the district court did not err in granting summary judgment in favor of Charter on Taglione's constructive demotion claim because it is not actionable under § 4112.14.

## CONCLUSION

For the reasons stated above, the judgment of the district court is **AFFIRMED**.