[Cite as *Grubbs v. Delphi Automotive Sys.*, 2018-Ohio-2352.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| RONNIE GRUBBS, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2017-T-0097** |
| DELPHI AUTOMOTIVE SYSTEMS, LLC, et al., | : | |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2015 CV 01882.

Judgment: Reversed and remanded.

*Brian D. Spitz* and *Fred M. Bean*, The Spitz Law Firm, LLC, 25200 Chagrin Boulevard, Suite 200, Beachwood, OH 44122 (For Plaintiff-Appellant).

*Patrick O. Peters* and *Michael Joseph Kozimor*, Jackson Lewis, P.C., Park Center Plaza I, Suite 400, 6100 Oak Tree Boulevard, Cleveland, OH 44131 (For Defendants-Appellees).

DIANE V. GRENDELL, J.

{¶1} Plaintiff-appellant, Ronnie Grubbs, appeals the judgment of the Trumbull County Court of Common Pleas, granting summary judgment in favor of defendants-appellees, Delphi Automotive Systems, LLC, Thomas E. Flak, George (Geoffrey) Svirbely, and Dominic Amato. The issue before this court is whether evidence that a minority employee was treated less favorably than nonminority employees, received disciplines that were either not merited or not proportionate to the alleged misconduct,

and was recalled to work after nonminority employees with less seniority, is sufficient to raise a genuine issue of material fact with respect to claims of racial discrimination and retaliation. For the following reasons, we reverse the decision of the court below and remand this matter for further proceedings consistent with this opinion.

{¶2} On October 19, 2015, Grubbs filed a Complaint for Damages and Injunctive Relief in the Trumbull County Court of Common Pleas against Delphi, Flak, Svirbely, and Amato. Grubbs raised claims of Race Discrimination (Count I), Wrongful Termination based on Race Discrimination (Count II), Retaliation (Count III), and Intentional Infliction of Emotional Distress (Count IV).

{¶3} On December 18, 2015, the defendants collectively filed an Answer and Affirmative Defenses to Plaintiff's Complaint.

{¶4} On August 18, 2017, the defendants filed a Motion for Summary Judgment.

{¶5} On September 7, 2017, Grubbs filed a Brief in Opposition.

{¶6} On September 11, 2017, the defendants with leave of court filed a Reply.

{¶7} The following pertinent evidence was presented by the parties:

{¶8} Grubbs is an African-American. In 1997, he began work as a tool and die maker at Delphi's Plant 11 in Warren and became a member of the Industrial Division of the Communications Workers of America Local 717. He was discharged in 2014. Between 2007 and 2014, Grubbs was disciplined sixteen times. Ten of these disciplines were ultimately removed from his record generally through the union's grievance procedure. Grubbs returned to work in December 2015 as the result of an agreement negotiated between the union and Delphi.

2

{¶9}   Defendant Flak was the general supervisor at Plant 11 from 2006 through 2013.  According to Grubbs, Flak "always had it in for me and my race."  Grubbs also claimed that several plant supervisors, including Amato and Paulette Clay, advised him that Flak had a personal bias against him and sought opportunities to discipline him.

{¶10}  Defendant Svirbely was a labor relations representative at Plant 11 between 1995 and 2009 and again after 2011.  Grubbs alleges that Svirbely has failed to represent him impartially as a labor relations representative.

{¶11}  Defendant Amato was a supervisor at Plant 11 since 1999.  Grubbs complains that Amato would address him as "bro" and "brother" rather than a proper name.  Grubbs alleges that Amato began to show bias towards him after he recorded Amato being verbally abusive toward another Delphi employee.

{¶12}  In November 2008, Grubbs was disciplined by supervisor Bob Poweski for violating Shop Rule 20 ("wasting time or loitering in toilets or on any company property during work hours") and sent home for the balance of his shift.  On this occasion, Grubbs explained that Flak had instructed another employee (Mike Long) to operate his press while he was at lunch, although he was not authorized to have Long start a press assigned to another employee.  When the press produced bad parts, "they didn't want to admit that they ran the machine for 40 minutes without [him] signing off on it" so they lied and claimed Grubbs had run the press.  When the lie was exposed, Flak instructed Poweski to write Grubbs up so that he would get "some kind of discipline."

{¶13}  In January 2009, Grubbs was disciplined by Flak for violating Shop Rule 22 ("threatening, intimidating, coercing, or interfering with fellow employees on the premises at any time") and sent home for the balance of his shift plus fourteen days.  Grubbs explained that a supervisor from another area who was covering in Grubbs'

department had instructed some employees to operate a machine that was not safe and/or functioning properly. Grubbs advised the operators about the condition of the machine and suggested that they contact a union representative. When Grubbs protested to Flak that the supervisor was misrepresenting the situation, Flak refused to investigate and asserted that the "word of a supervisor" was "good enough" for him.

{¶14} In December 2010, Grubbs wrote a letter to the labor relations department at Delphi complaining about the disciplines he had received and that no action had been taken on the grievances he had filed.

{¶15} In September 2011, Grubbs was disciplined by an African-American supervisor, Paulette Clay, for having a radio/antenna at his work bench which purportedly violated a plant policy prohibiting laptops and video devices. Grubbs complained that he had not been warned that the radio/antenna violated the policy and that Caucasian fellow-workers had not been disciplined for violating the policy. Grubbs claimed (based on what Clay told him) that Flak instructed her to issue the discipline although she was not directly involved in the incident. Grubbs noted that other employees were eventually disciplined for violating this policy but only after he "screamed at the top of my lungs that everybody is doing this."

{¶16} Ultimately, the September 2011 discipline was removed from Grubbs' record. Following this incident, Grubbs filed the first of two complaints with the Equal Employment Opportunity Commission complaining that Flak was pursuing him "personally without cause." Grubbs also filed written complaints with Monica Haney of Delphi's labor relations and human resources department and with the National Labor Relations Board.

**{¶17}** On two occasions in April 2012, Grubbs was disciplined by Flak for violating Shop Rule 40 ("deportment not protected by the National Labor Relations Act, which is contrary to the interests of fellow employees or the company") for "fail[ing] to report off as instructed in accordance with FMLA guidelines." He was sent home for the balance of his shift on each occasion plus seven and fourteen days respectively. Grubbs spoke with other employees who used FMLA leave and learned that they followed the same procedure he did but were not disciplined. Flak was unable to recall or explain how Grubbs had violated the call-off procedures.

**{¶18}** In July 2012, Grubbs filed a second complaint with the EEOC.

**{¶19}** In August 2013, Grubbs was disciplined by Flak for violating Shop Rule 20 by "wast[ing] an excessive amount of time while assigned to press 807, including having to be awoken from sleep two separate times," and sent home for the balance of his shift plus thirty days. Grubbs explained that another employee was assigned to the press during the time that he was purportedly wasting time.

**{¶20}** In March 2014, Grubbs was disciplined by Mark Anderson (Flak's replacement as general supervisor at Plant 11) for violating Shop Rule 20 by being out of his assigned work area as reported by Amato. As a result of this discipline, Grubbs' employment with Delphi was terminated.

**{¶21}** During the investigation of the incident, Grubbs produced witnesses disputing Amato's charge that he was not in his assigned work area.[1] Grubbs also requested that Larry B. Peoples, Plant 11's African-American human resources manager, be present at the disciplinary hearing. Svirbely represented to Grubbs that

---

1. Grubbs' appellant's brief refers to the depositions of Doug Murphy and Danye Bunsie as witnesses although these depositions have not been filed with the court. Written statements by Murphy and another witness, Tiffany Wylie, were attached to the Brief in Opposition to Summary Judgment.

Peoples was unable to attend the hearing. In fact, Peoples was upset that Svirbely did not advise him of the situation until after Grubbs' termination ("if someone is discharged from my plant, I want to know").

{¶22} In December 2015, Grubbs returned to work at Delphi Plant 47 in Vienna pursuant to a Memorandum of Settlement, Last Chance Agreement negotiated between the union and Delphi. The agreement provided that Grubbs would be returned to active status after all permanently laid off tool and die makers had been made an offer to return to work. This provision allowed two Caucasian tool and die makers, John Daugherty and Keith Zreliak, to return to work before Grubbs. Daugherty had been terminated for physically threatening other employees and Zreliak for stealing from Delphi and both had less seniority than Grubbs.

{¶23} On September 14, 2017, the trial court granted the defendants' Motion.

{¶24} On October 10, 2017, Grubbs filed a Notice of Appeal. On appeal, Grubbs raises the following assignments of error:

{¶25} "[1.] The trial court committed reversible error by wrongfully determining that there were no genuine issues of material fact regarding Grubbs' prima facie case for race discrimination."

{¶26} "[2.] The trial court committed reversible error by wrongfully determining that there were no genuine issues of material fact regarding Grubbs' prima facie case for retaliation."

{¶27} "[3.] The trial court committed reversible error by wrongfully holding that there were no genuine issues of material fact regarding pretext."

{¶28} Pursuant to Civil Rule 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated,

6

(2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor." A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "Under this standard, the reviewing court conducts an independent review of the evidence before the trial court and renders a decision de novo, i.e., as a matter of law and without deference to the conclusions of the lower court." (Citation omitted.) *Green v. Marc Glassman, Inc.*, 11th Dist. Portage No. 2017-P-0041, 2017-Ohio-9343, ¶ 12.

**{¶29}** In his first assignment of error, Grubbs challenges the trial court's grant of summary judgment with respect to his claims of racial discrimination.

**{¶30}** Under Ohio Law, it is "an unlawful discriminatory practice * * * [f]or any employer, because of the race * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." R.C. 4112.02(A).

**{¶31}** "In order to prevail in an employment discrimination case, the plaintiff must prove discriminatory intent." *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 583, 664 N.E.2d 1272 (1996). The fact of discriminatory intent may be established directly or indirectly. In the absence of direct evidence, the Ohio Supreme Court has recognized that a plaintiff may establish a prima facie case of employment discrimination where it is demonstrated that he is a member of a racial minority and has suffered adverse

7

employment action while similarly situated, nonminority employees have been treated more favorably. *James v. Delphi Automotive Sys.*, 10th Dist. Franklin No. 04AP-215, 2004-Ohio-5493, ¶ 7.[2]

**{¶32}** "[I]f a plaintiff establishes a prima facie case of disparate-treatment employment discrimination under R.C. Chapter 4112, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its treatment of the plaintiff." *Allen v. totes/Isotoner Corp.*, 123 Ohio St.3d 216, 2009-Ohio-4231, 915 N.E.2d 622, ¶ 4. "If the employer carries its burden of articulating a legitimate, nondiscriminatory reason for its employment decision, the plaintiff must prove that the employer's stated nondiscriminatory reasons were a pretext for impermissible discrimination." *Id.* at ¶ 5. "If an employment-discrimination plaintiff fails to establish a triable factual issue on an essential element of her case, summary judgment for the employer is appropriate." *Id.*; *McCarthy v. Lordstown*, 11th Dist. Trumbull No. 2014-T-0050, 2015-Ohio-955, ¶ 13 ("[t]he plaintiff's burden is to prove that the employer's reason was false and that discrimination was the real reason for the employer's actions").

**{¶33}** Construing the evidence most strongly in Grubbs' favor, we conclude that he has established a prima facie case of employment discrimination based on race. It is notable that Grubbs worked at Delphi for ten years without incurring significant

---

2. The elements necessary to establish a prima facie case of employment discrimination based on race are variable depending on the particular circumstances of the case. *Compare Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 197, 421 N.E.2d 128 (1981) (termination based on race) with *Butler v. Lubrizol Corp.*, 11th Dist. Lake No. 2014-L-104, 2015-Ohio-1216, ¶ 13 (reverse discrimination). As observed by the Ohio Supreme Court: "The importance of [the test] lies, not in its specification of the discrete elements of proof there required, but in its recognition of the general principle that any * * * plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion * * *." (Citation omitted.) *Mauzy* at 584.

discipline. In the seven years that Flak was the general supervisor at Plant 11, Grubbs was disciplined a total of sixteen times. Although ten of those disciplines were ultimately removed from his record, the result was his discharge under Delphi's system of progressive discipline. There is evidence that similarly situated non-minority employees were treated more favorably, particularly in respect to the discipline received for violating the laptop and video device policy and the FMLA call-off procedures. Grubbs' return to work also evidences disparate treatment inasmuch as other tool and die workers with less seniority and arguably more serious disciplinary infractions were returned prior to Grubbs.

{¶34} Delphi has submitted evidence that there were legitimate, nondiscriminatory reasons for Grubbs' discipline. In each instance Grubbs has introduced some evidence that the reason for the discipline may have been pretextual. The trial court found Grubbs' evidence in this respect to be "conclusory" and "self-serving," but we disagree. There is evidence available or potentially available to either corroborate or refute Grubbs' claim of pretext. For example, Grubbs was disciplined twice in a month for not following the proper call-off procedures. He claims that no other employees of whom he is aware have been so disciplined. Delphi has failed to explain the specific reason for the disciplines or identify other employees who have been disciplined for the same infraction. The nature of the discipline, suspension for over three weeks without pay, hardly seems proportionate to the seriousness of the alleged misconduct.

{¶35} The most serious deficiency in Grubbs' claims is the lack of direct evidence that Flak and his subordinates were motivated by a racial bias as opposed to a personal dislike of Grubbs. That question, however, should properly be left for a jury

to decide.  Direct evidence of a racial motivation cannot be expected in every instance. In the present case, Grubbs has introduced evidence of disparate treatment from which a racial motivation may be inferred sufficient to overcome summary judgment.  *Williams v. Spitzer Auto World, Inc.*, 9th Dist. Lorain No. 07CA009098, 2008-Ohio-1467, ¶ 18 ("the plaintiff's race need not have been the exclusive factor in the decision, it need only have 'made a difference'") (citation omitted).

**{¶36}**  The first assignment of error is with merit.

**{¶37}**  In the second assignment of error, Grubbs argues the trial court erred by granting summary judgment on his claim of retaliation.

**{¶38}**  Under Ohio law, it is "an unlawful discriminatory practice * * * [f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code."  R.C. 4112.02(I).

**{¶39}**  "To establish a case of retaliation, a claimant must prove that (1) she engaged in a protected activity, (2) the defending party was aware that the claimant had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and adverse action."  *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, 879 N.E.2d 174, ¶ 13.  To establish a prima facie case of retaliation, "the plaintiff is not required to *conclusively* prove all the elements of his claim," however, "the plaintiff must ultimately prove, by a preponderance of the evidence, that the plaintiff's protected

activity was the determinative factor in the employer's adverse employment action." *Wholf v. Tremco, Inc.*, 2015-Ohio-171, 26 N.E.3d 902, ¶ 43 (8th Dist.).

**{¶40}** The trial court found that Grubbs had failed to establish a prima facie case of retaliation noting (incorrectly) that he "filled out his paperwork with the EEOC in 2012" but was not terminated until 2014. The court expressly found "the length of time between his EEOC complaint and the ultimate termination are too far removed in time to justify any causal connection." We disagree.

**{¶41}** The 2012 EEOC complaint was the second which Grubbs had filed. The first EEOC complaint was filed in October 2011, and within a year of that filing he was disciplined two times for improperly following the call-off procedures to use FMLA leave. Both these disciplines were materially adverse to Grubbs' employment in that, on account of the system of progressive discipline, they required Grubbs' termination for the discipline received in March 2014. Stated another way, if Grubbs had not received these intervening disciplines, his termination in 2014 would not have been mandated. Admittedly, "the less time that passes between the protected activity and the retaliatory action, the more conspicuous the causal connection," however, "retaliation has been found when termination followed the protected activity by over one year." (Citation omitted.) *Wholf* at ¶ 54. In the present case, the evidence presents a record of sixteen disciplines within a seven-year period during which Grubbs filed his EEOC complaints and otherwise complained of retaliatory and/or discriminatory treatment. For the purposes of summary judgment, such evidence is sufficient to establish a prima facie case.

**{¶42}** The second assignment of error is with merit.

**{¶43}** In the third assignment of error, Grubbs argues that the trial court erred in holding that there were not genuine issues of material fact regarding whether the purported reasons for his disciplines and termination were pretextual.

**{¶44}** Where an employer has articulated a legitimate, nondiscriminatory reason for its adverse employment decision, a plaintiff may establish that the proffered nondiscriminatory reason was a pretext for discrimination/retaliation by presenting evidence that the proffered reason "(1) has no basis in fact, (2) did not actually motivate the employer's adverse employment action, or (3) was insufficient to motivate the adverse employment action." *Ellis v. Jungle Jim's Market, Inc.*, 2015-Ohio-4226, 44 N.E.3d 1034, ¶ 49 (12th Dist.).

**{¶45}** Grubbs has presented evidence that the stated reasons for his disciplines were pretextual. There is evidence Grubbs was disciplined for conduct for which other employees were either not disciplined or not disciplined as severely, such as for violating the laptop and video device policy and the FMLA call-off procedures discussed above. There is also evidence that Delphi supervisors failed to investigate the underlying factual bases for the disciplines. Grubbs reported that Flak told him that such investigation was unnecessary because a supervisor's claim that a violation occurred was sufficient to issue a discipline. Grubbs also reported that supervisors confided that they issued disciplines because Flak had instructed them to do so, rather than because they believed discipline was merited.

**{¶46}** Grubbs' final discipline resulting in his termination was for being out of his assigned work area. Despite Grubbs having witnesses to dispute Amato's claim, these witnesses were not consulted prior to the discipline being issued. According to Svirbely, it would have been the union's responsibility to present witnesses on Grubbs' behalf. It

12

is also peculiar that, although Grubbs requested Peoples' presence at his termination hearing and although Peoples is normally advised of such occurrences, Svirbely did not inform Peoples of the situation until after Grubbs' termination yet told Grubbs' that Peoples was unavailable. This evidence is sufficient to raise an issue as to whether the reasons for Grubbs' disciplines were pretextual.

{¶47} The third assignment of error is with merit.

{¶48} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas, granting summary judgment in favor of the defendants-appellees, is reversed and this matter is remanded for further proceedings consistent with this opinion. Costs to be taxed against the appellees.

THOMAS R. WRIGHT, P.J.,

COLLEEN MARY O'TOOLE, J.,

concur.